[No. G037261. Fourth Dist., Div. Three. Oct. 22, 2008.]

YMELDA T. PATRICK, Plaintiff and Appellant, v.
ALACER CORPORATION, Defendant and Respondent.

998

**COUNSEL**

Hess-Verdon & Associates, Jillyn Hess-Verdon, Edward L. Laird and Michael E. Reznick for Plaintiff and Appellant.

Anderholt & Turner, J. John Anderholt; Allan B. Weiss & Associates and Allen L. Thomas for Defendant and Respondent.

**OPINION**

**IKOLA, J.**—Plaintiff Ymelda T. Patrick appeals from a judgment of dismissal entered after the court sustained defendant Alacer Corporation's (Alacer) demurrer to her third amended complaint without leave to amend. Plaintiff asserted shareholder derivative and direct causes of action against Alacer and three individuals who sit on its board of directors and serve as trustees of the trust that is its sole record shareholder.[1]

The court erred in sustaining Alacer's demurrer to the derivative causes of action. Alacer is the real party in interest, and only a nominal defendant. It cannot demur to a derivative complaint filed on its behalf, except on limited grounds such as the shareholder plaintiff's lack of standing. And here, plaintiff has standing to assert the derivative claims. She alleges a community property interest in Alacer stock, which, if true, renders her a beneficial shareholder of Alacer.

But the court correctly sustained the demurrer to plaintiff's direct cause of action for fraud. Plaintiff alleged she voted for certain Alacer board members

---

[1] We affirm in part and reverse in part the judgment entered for these individuals in this derivative action (and address various probate petitions consolidated therewith) in *Patrick v. Turner* (Oct. 22, 2008, G037607) (nonpub. opn.).

in reliance on their misrepresentations. But plaintiff fails to allege causation, as her vote was unnecessary to the directors' election. We affirm in part, reverse in part, and remand.

## FACTS

The following facts are alleged or implied by the third amended complaint (complaint). (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569] [on demurrer, "courts must assume the truth of the complaint's properly pleaded or implied factual allegations"].)

### *The Director Defendants Allegedly Take Control of Alacer and Loot It*

Plaintiff and her late husband, James Patrick, founded Alacer in the mid-1970's to manufacture vitamin supplements. Together, they created the vitamin supplement formulas, served as corporate officers, and financially supported Alacer during their marriage. Alacer flourished under their care, partly due to the popularity of its Emergen-C vitamin C supplement, attaining a market value of $70 million or more. Plaintiff alleges the increased value of Alacer, over a fair return on her husband's original investment, is community property.

Plaintiff's husband, the sole record owner of Alacer stock, transferred all of the shares to the James W. Patrick Revocable Trust (the Trust) in 2000. The Trust is Alacer's only shareholder of record. The Trust documents direct the trustees to distribute up to 46 percent of the Trust's Alacer stock to plaintiff upon her husband's death to satisfy any community property interest she may have in Alacer.

The Trust's trustees held a meeting in February 2003, while plaintiff's 90-year-old husband was deathly ill. There were five trustees at that time: plaintiff, defendant Ronald J. Patrick, defendant James Turner, defendant Thaddeus Smith (the Director defendants) and Vern Peck. The Director defendants sought to place themselves on Alacer's board of directors. The Director defendants asked plaintiff to support their plan. They represented to plaintiff that they would only serve as interim directors, until they retained new management. They further represented to plaintiff they would accept compensation of only $1,000 per meeting. In reliance on the Director defendants' representations, plaintiff voted to elect them to Alacer's board. The new board immediately elected themselves as corporate officers. Plaintiff, who had already been serving as a corporate officer, was named vice-president of sales and marketing.

Plaintiff's husband died three weeks later. The Trust continued to hold all of the Alacer shares, without distributing any to plaintiff.

A month later, the Director defendants called a board meeting. They ousted plaintiff from the meeting and voted to remove all of Alacer's officers, including plaintiff. The Director defendants then reappointed themselves as corporate officers.

After firing plaintiff as an Alacer vice-president, the Director defendants terminated her salary and health insurance. They seized her furniture and personal possessions from her office. They cancelled her corporate credit cards and confiscated her company car. They also attempted to remove plaintiff from Alacer's board.

Plaintiff alleges that once the Director defendants assumed control of Alacer, they began looting it. They stole money from it, took bloated salaries, sold corporate assets below market value for personal gain, failed to record transactions properly or at all, added friends and family to the company payroll and forgave loans they owed to Alacer, rejected bona fide arm's-length offers to buy Alacer in favor of pursuing secret sale discussions, and disclosed Alacer's trade secrets to an entity owned by defendant Patrick. The board allegedly ignored plaintiff's repeated demands to investigate the misconduct and pursue litigation.

*Plaintiff's Complaint and Alacer's Demurrer*

Plaintiff alleges six causes of action in the complaint. The first cause of action is styled, "CONSPIRACY TO DEFRAUD AGAINST ALL DEFEND-ANTS," and is labeled a "DIRECT CLAIM." Plaintiff alleges she approved reconstituting the board due to Director defendants' misrepresentations about their intent to serve on an interim basis and accept a $1,000 per meeting salary.

The second cause of action is styled, "BREACH OF FIDUCIARY DU-TIES AGAINST ALL DEFENDANTS," and is labeled "DERIVATIVE CLAIMS." Plaintiff alleges the Director defendants breached their fiduciary duties as Alacer directors by mismanaging and basically looting Alacer.

The third cause of action is styled, "IMPOSITION OF A CONSTRUC-TIVE TRUST FOR EMBEZZLEMENT AGAINST ALL DEFENDANTS." Plaintiff seeks to impose a constructive trust in favor of Alacer on any revenue generated by the improper sale of corporate assets, as well as a reasonable rate of return on Alacer assets improperly used by the Director defendants.

The fourth cause of action is styled, "INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS." Plaintiff seeks to enjoin defendants and their agents

from (a) approving salary increases for Alacer's officers, directors, or employees without court approval, (b) selling corporate assets outside the ordinary course of business without plaintiff's consent, (c) hiring additional officers or consultants, (d) denying plaintiff access to corporate books and records, (e) using corporate funds to pay the Director defendants' attorney fees, (f) "looting the corporation," (g) ignoring bona fide offers to buy Alacer, and (h) taking any action impairing Alacer's property and business.

The fifth cause of action is styled, "UNFAIR BUSINESS PRACTICES (UNFAIR COMPETITION)," and is asserted against the Director defendants. Plaintiff alleges the Director defendants sold Alacer assets below cost, offered improper discounts by forgiving loans, and misappropriated Alacer trade secrets. Plaintiff seeks disgorgement of funds they wrongfully acquired.

The sixth cause of action is styled, "DECLARATORY RELIEF AGAINST ALL DEFENDANTS." Plaintiff seeks a declaration that she has a community property interest in Alacer.

Alacer demurred to the complaint. In an overarching contention, Alacer claimed plaintiff lacked standing to assert shareholder derivative causes of action. It also challenged the specific causes of action. It contended the conspiracy to defraud cause of action failed because plaintiff failed to allege causation or damages and had not clarified whether it was a direct or derivative claim. It also claimed it could not be held liable for conspiracy due to the agent's immunity rule. Alacer contended the constructive trust cause of action failed because it is a claim for relief, not a cause of action; moreover, plaintiff did not specifically identify any wrongfully obtained funds in Alacer's possession. It claimed the injunctive relief cause of action failed because it too is a claim for relief; also, courts cannot enjoin corporate officers from lawfully exercising their powers. Alacer contended the unlawful business practices cause of action failed because plaintiff had not sufficiently pleaded the underlying business practices, alleged the loss of money or property, or identified the misappropriated trade secret. Finally, it claimed the declaratory relief cause of action exceeded the scope of plaintiff's leave to amend the prior complaint and failed to join indispensable parties.

The court sustained the demurrer to all causes of action without leave to amend. It held plaintiff failed to state any of the purported causes of action. It further held all the causes of action except that for conspiracy to defraud violated the scope of amendment permitted by the court's prior orders.[2] The order stated, "To the extent plaintiff . . . is again implicitly requesting the

---

[2] Neither the written order sustaining Alacer's demurrer nor the attached tentative ruling expressly state the scope of permitted amendment.

Court to reconsider its previous rulings on the derivative standing issues . . . that request is again denied for failure to satisfy any of the requirements of [Code of Civil Procedure section] 1008."

## DISCUSSION

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

### *Alacer Cannot Demur to Derivative Causes of Action Asserted on Its Behalf*

Alacer's demurrer presents an interesting question not squarely addressed by California case law: May a corporation file a demurrer opposing a shareholder derivative complaint—and if so, on what grounds? The parties filed supplemental briefs on this issue at our invitation.

■ The issue arises from the basic nature of a shareholder derivative action. " 'The management [of a corporation] owes to the stockholders a duty to take proper steps to enforce all claims which the corporation may have. When it fails to perform this duty, the stockholders have a right to do so.' " (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 107 [81 Cal.Rptr. 592, 460 P.2d 464] (*Jones*).) "The shareholders may . . . bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 [72 Cal.Rptr.3d 129, 175 P.3d 1184] (*Grosset*).)

But "the particular stockholder who brings the suit is merely a nominal party plaintiff." (*Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 21 [108 P.2d 906] (*Klopstock*).) It is the corporation that "is the ultimate beneficiary of such a derivative suit." (*Ibid.*) Thus, "[t]he corporation [is] the real party plaintiff in the action." (*Russell v. Weyand* (1935) 5 Cal.App.2d 259, 260 [42 P.2d 381].)

Though the corporation is essentially the plaintiff in a derivative action, "[w]hen a derivative suit is brought to litigate the rights of the corporation, the corporation . . . must be joined as a nominal defendant." (*Grosset, supra,* 42 Cal.4th at p. 1108.) The corporation must be joined because "its rights, not those of the nominal plaintiff, are to be litigated . . ." (*Beyerbach v. Juno Oil Co.* (1954) 42 Cal.2d 11, 28 [265 P.2d 1] (*Beyerbach*)), and to offer the real defendants res judicata protection from later suits. (*Gagnon Co., Inc. v. Nevada Desert Inn* (1955) 45 Cal.2d 448, 453 [289 P.2d 466].) Naming the corporation a defendant, not a plaintiff, follows from the joinder rules: "If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant . . . ." (Code Civ. Proc., § 382.)[3] So "although the corporation is made a defendant in a derivative suit, the corporation nevertheless is the real plaintiff . . . ." (*Jones, supra,* 1 Cal.3d at p. 107.)

The question now arises—if the corporation is the real plaintiff in a derivative action and the potential beneficiary of any recovery, how can it oppose the action? A demurrer may be filed only by "[t]he party against whom a complaint . . . has been filed . . . ." (§ 430.10.) The complaint in a derivative action is filed on the corporation's behalf; not against it. (*Jones, supra,* 1 Cal.3d at p. 107; *Beyerbach, supra,* 42 Cal.2d at p. 28.) It is only a "nominal defendant." (*Grosset, supra,* 42 Cal.4th at p. 1108.) The only reason the corporation is named a nominal defendant is its refusal to join the action as a plaintiff. (§ 382.) "The corporation has traditionally been aligned as a defendant because it is in conflict with its stockholder over the advisability of bringing suit . . . ." (Note, *Federal Courts—Diversity of Citizenship: Corporations—Corporation in Derivative Suit Must Be Realigned as Plaintiff When Not Dominated by Individual Defendants* (1954) 68 Harv. L.Rev. 193, 194 (Note, 68 Harv. L.Rev.).) In a real sense, the only claim a shareholder plaintiff asserts against the nominal defendant corporation in a derivative action is the claim the corporation has failed to pursue the litigation.

The standing requirements for a derivative action reflect the limited adverse relationship between the shareholder plaintiff and the corporation. The shareholder plaintiff must allege it is a record or beneficial shareholder of the corporation, it presented the basis of the litigation to the corporation's board, and it tried to "secure from the board such action as plaintiff desires." (Corp. Code, § 800, subd. (b)(1), (2).) Demand on the board will be excused only when the plaintiff sufficiently alleges the demand would have been futile. (Corp. Code, § 800, subd. (b)(2); *Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1618–1619 [19 Cal.Rptr.2d 459].) Thus, for a plaintiff to have standing to file a derivative action, it must allege the corporation knew

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

about the claim and was urged to pursue it to no avail or, in any event, the corporation would not have pursued the claim.

The narrow dispute between a shareholder plaintiff and the corporation also underlies the "special litigation committee" (SLC) defense. The corporation in a derivative action may "appoint a special litigation committee of independent directors to investigate the challenged transaction." (*Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 185 [133 Cal.Rptr.2d 408] (*Desaigoudar*).) If the SLC "reasonably determines that it is not in the best interests of the corporation to pursue the claims asserted in the derivative action, that decision is protected by the business judgment rule." (*Finley v. Superior Court* (2000) 80 Cal.App.4th 1152, 1158 [96 Cal.Rptr.2d 128] (*Finley*).) If the court then determines " 'as a matter of fact . . . the committee members were disinterested and . . . they conducted an adequate investigation . . . it must dismiss the derivative action.' " (*Desaigoudar, supra*, 108 Cal.App.4th at pp. 185–188 [court reviews committee's independence and the investigation's adequacy, but does not review reasonableness of the SLC's decision].) Thus, for a shareholder plaintiff to take a derivative action to trial and prevail, it must be able to withstand the corporation's objection that it legitimately does not want to pursue the litigation.

The conclusion follows that a nominal defendant corporation generally may not defend a derivative action filed on its behalf. The corporation may assert defenses contesting the plaintiff's right or decision to bring suit, such as asserting the shareholder plaintiff's lack of standing or the SLC defense. (Corp. Code, § 800, subd. (b)(1); *Desaigoudar, supra*, 108 Cal.App.4th at p. 185.) We need not now enumerate what other defenses a corporation may assert in a derivative action, if any. It suffices to hold the corporation has no ground to challenge the merits of a derivative claim filed on its behalf and from which it stands to benefit.

While California law on derivative actions supports this conclusion, other jurisdictions have explicitly constrained a corporation's ability to challenge a derivative action.[4] (See, e.g., *Swenson v. Thibaut* (1978) 39 N.C.App. 77 [250 S.E.2d 279, 293–294] (*Swenson*); *Sobba v. Elmen* (E.D.Ark. 2006) 462 F.Supp.2d 944, 947–950 (*Sobba*); *Rowen v. Le Mars Mut. Ins. Co. of Iowa* (Iowa 1979) 282 N.W.2d 639, 645 (*Rowen*); *Meyers v. Smith* (1933) 190 Minn. 157 [251 N.W. 20, 21] (*Meyers*); accord, Note, 68 Harv. L.Rev., *supra*, at

---

[4] The plaintiff raised a similar issue in *Beyerbach*, which the court did not resolve while upholding the requirement that stockholder plaintiffs post security in derivative actions. (*Beyerbach, supra*, 42 Cal.2d at p. 25.) It noted, "Even if we assume, as argued by plaintiff, that if the [derivative] action is to be tried on its merits it is [the defendant directors] who will carry the main burden of defending the suit and that *the corporation need not actively resist the claims of plaintiff* [citations], it does not follow that the amount [of security] fixed as to any defendant is unreasonable . . . ." (*Ibid.*, italics added.)

p. 194 ["in no case may the nominal defendant [in a derivative action] raise defenses of the real defendants"]; Note, *Defenses in Shareholders' Derivative Suits—Who May Raise Them* (1952) 66 Harv. L.Rev. 342, 343 ["the proper party to invoke a given defense should be the party whom the defense is designed to protect"]; see also *id*. at p. 345 ["The right of the corporation to defend, however, should be limited to those aspects of the case in which it is a real defendant."].)

In *Swenson, supra*, 250 S.E.2d 279, the court thoroughly analyzed the issue. In that derivative action, shareholders alleged corporate officers and directors had breached their fiduciary duty to the corporation through "a pattern of self-dealing and negligent acquiescence . . . amounting to a 'looting' of the [corporation's] assets." (*Id*. at p. 285.) The individual defendants and the corporation moved to dismiss on several grounds; the trial court denied the motions. (*Id*. at pp. 287, 295.) On appeal, the court raised on its own motion a "threshold question"—"to what extent, if any, is a corporation entitled to defend itself against a derivative action when it is named as a party defendant?" It noted—consistent with California law—"[a] corporation is, beyond question, a necessary party to any litigation brought derivatively in its name, [citation], and is customarily captioned a nominal defendant. However, as the action is brought in the right of the corporation and any recovery thereunder accrues to the benefit of the corporation and not to the nominal plaintiffs who bring the action derivatively, it is apparent that the interests of the corporation are not necessarily adverse to those of the plaintiffs and may be identical to them." (*Id*. at p. 293.)

The *Swenson* court found "apparent" the "anomaly of a corporation, in whose name and right a derivative action is brought, being allowed to defend itself against itself." (*Swenson, supra*, 250 S.E.2d at p. 294.) The anomaly "is particularly apparent," the court continued, "where the alleged wrongdoers are in control of the corporation." (*Ibid*.) Thus, it readily concluded "the corporation . . . should not be allowed to defend this action on its merits, and portions of [the corporation's] appeal will be dismissed for lack of standing . . . ." (*Ibid*.) Some defenses may be available to a corporation in unusual derivative actions, however. The shareholder plaintiff's "lack of standing . . . to sue derivatively for reasons of insufficient representation of shareholders and a failure on [its] part to make a demand upon the board of directors" are defenses "peculiar to the corporation alone, and may be properly raised only by the nominal defendant who, for purposes of those matters, ceases to be a nominal defendant and becomes an actual party defendant." (*Ibid*., italics omitted.) The corporation may be able to defend on the merits "an action to enjoin the performance of a contract by the corporation, to appoint a receiver, to interfere with a corporate reorganization or to interfere with internal management where there is no allegation of fraud or bad faith," or other situations where the corporation has "interests adverse to those of the

nominal plaintiffs bringing the action derivatively." (*Ibid.*) Finally, the corporation may assert lack of personal jurisdiction, lack of subject matter jurisdiction, or improper venue. (*Ibid.*)

Accordingly, the *Swenson* court held "the corporation, except as noted above, may not defend itself against the derivative action on the merits and must limit its defenses, if any, to the pretrial matters proper to it. Where a corporation seeks to extend its defenses beyond those areas in which it may properly conduct them, dismissal will lie against it." (*Swenson, supra,* 250 S.E.2d at p. 294.)

*Swenson*'s limitation on a corporation's ability to defend the merits of a derivative action brought on its behalf was recently adopted by another court. (*Sobba, supra,* 462 F.Supp.2d at pp. 948–949.) The *Sobba* court struck the corporation's answer in a derivative action because it asserted affirmative defenses on behalf of the individual defendants. (*Id.* at p. 950.) To be sure, a corporation can dispute the plaintiff's standing by filing an answer in a derivative action. "A corporation may raise the defense that the stockholder failed to comply with the condition precedent of first calling on it to file suit, that it has already filed suit, that the corporation has already achieved a recovery, that the corporation has by final adjudication failed to recover, or other similar defenses." (*Ibid.,* fn. omitted.) Otherwise, the court held, "the general rule for corporate participation in a derivative action is that '[u]nless the derivative action threatens rather than advances corporate interests, [the corporation] cannot participate in the defense on the merits.' " (*Id.* at p. 947 [predicting Arkansas law].) "Because the claims asserted and the relief sought in [the derivative] complaint would, if proven, advance rather than threaten the interests of the nominal defendants, the nominal defendants must remain neutral in this action." (*Id.* at p. 949.)

The *Sobba* court noted a practical and ethical reason why corporations should not defend derivative suits on the merits. "Allowing the nominal [corporate] defendants to defend on the merits in effect would allow [the individual defendant] to shift the cost of his defense of the derivative suit to the corporations against which he has allegedly committed tortious conduct. . . . [The individual defendant's] using his control of the nominal defendants to get them to defend on the merits would shift the cost of his defense to the corporations even if [the shareholder plaintiff's] claims are proven." (*Sobba, supra,* 462 F.Supp.2d at p. 950, citation omitted.)

Two state high courts have recognized corporations' limited ability to contest derivative actions. The Supreme Court of Iowa affirmed the dismissal of a corporation's cross-claims in a derivative action. (*Rowen, supra,* 282 N.W.2d at p. 645.) It held the corporation "should take no active part in

the controversy, merely awaiting the outcome and reaping the fruits of any judgment for plaintiffs." (*Ibid.*) Similarly, the Supreme Court of Minnesota affirmed the striking of a corporation's affirmative defenses in a derivative action. (*Meyers, supra,* 251 N.W. at pp. 20–21.) It held the corporation "is a nominal party only" with no "right to here step in and, by answer, attempt to defeat what is practically its own suit and causes of action. Nor have the two individual defendants, in control thereof, any right to use the corporation for any such purpose or to impose on the corporation the burden of fighting their battle." (*Id.* at p. 21; accord, *Slutzker v. Rieber* (Ch.Ct. 1942) 132 N.J. Eq. 412 [28 A.2d 528, 529–530] [striking answer filed by nominal corporate defendant in derivative action; "[t]here is no occasion for the corporation to intermeddle in the controversy" as " 'the corporation is required to take and maintain a wholly neutral position, taking sides neither with the complaining stockholder nor with the defending director' "].)

For these reasons, much of Alacer's demurrer to the derivative causes of action is misplaced. It challenges the constructive trust, injunctive relief, and unlawful business practice causes of action. But it stands to benefit from these claims. In the constructive trust cause of action, plaintiff alleges the Director defendants wrongly used and sold corporate assets. In the injunctive relief cause of action, plaintiff seeks to enjoin the Director defendants from squandering Alacer assets in a variety of ways. In the unfair business practices cause of action, plaintiff alleges the Director defendants sold Alacer assets below cost and misappropriated Alacer trade secrets. Alacer has a substantial interest in recovering on these claims, should they be proven.

█ In contrast, Alacer asserts in its demurrer only one viable interest in opposing these claims—plaintiff's alleged lack of standing. It does not otherwise show any viable ground to oppose the derivative causes of action filed on its behalf. It does not maintain "that it has already filed suit, that [it] has already achieved a recovery, [or] that [it] has by final adjudication failed to recover." (*Sobba, supra,* 462 F.Supp.2d at p. 950.) Nor has it alleged any legitimate "interests adverse to those of the nominal plaintiffs bringing the action derivatively." (*Swenson, supra,* 250 S.E.2d at p. 294.) Allowing Alacer to demur to the derivative causes of action on grounds that the Director defendants could assert for themselves if they chose, and did, "would allow [the Director defendants] to shift the cost of [their] defense of the derivative suit to the corporation[] against which [they have] allegedly committed tortious conduct." (*Sobba, supra,* 462 F.Supp.2d at p. 950.) The Director defendants lack "any right to use the corporation . . . to impose on the corporation the burden of fighting their battle." (*Meyers, supra,* 251 N.W. at p. 21.) The court erred by entertaining, let alone sustaining, Alacer's demurrer on any ground other than lack of standing.

Alacer's counterarguments do not hold water. First, it observes that the corporation in a derivative action "is the defendant . . . to the extent that [it] has determined that pursuit of the lawsuit is not in its best interests." True. This is why the corporation can raise the shareholder plaintiff's failure to present a demand to the board and assert the SLC defense. (Corp. Code, § 800, subd. (b)(2); *Desaigoudar, supra,* 108 Cal.App.4th at p. 185.) It does not authorize the corporation to otherwise challenge the derivative action brought on its behalf.

■ Second, Alacer cites California cases allowing the corporation to defend against derivative actions. But most of these cases involved the SLC defense. (*Desaigoudar, supra,* 108 Cal.App.4th at p. 185; *Finley, supra,* 80 Cal.App.4th at p. 1158; *Will v. Engebretson & Co.* (1989) 213 Cal.App.3d 1033, 1040 [261 Cal.Rptr. 868].) In another case, the court noted without comment that the corporation and the individual defendants had jointly demurred and moved for summary judgment. (*Daly v. Yessne* (2005) 131 Cal.App.4th 52, 56 [31 Cal.Rptr.3d 420] (*Daly*).) There was no discussion whether the corporation had any right to assert the individual defendants' defenses. "[C]ases are not authority for propositions not considered therein."[5] (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496].)

Third, Alacer relies upon cases invoking the exception that corporations may defend against derivative actions only when the suit threatens the corporation itself.[6] (*Blish v. Thompson Auto. Arms Corp.* (1948) 30 Del.Ch. 538 [64 A.2d 581, 607] [noting "the general rule to be that a corporation may defend a stockholder's derivative action (although theoretically any recovery rebounds to the benefit of the corporation) if the corporate interests are threatened by the suit"; corporation could defend derivative action seeking to cancel shares]; *Weiland v. Northwestern Distilleries, Inc.* (1938) 203 Minn. 600 [281 N.W. 364, 365] [corporation is indispensable party and must be

---

[5] The federal cases upon which Alacer relies are likewise inapt. (*In re CNET Networks, Inc.* (N.D.Cal. 2007) 483 F.Supp.2d 947, 949 [lack of standing (no demand)]; *Johnson v. Hui* (N.D.Cal. 1991) 811 F.Supp. 479, 486 [SLC defense]; *In re Zoran Corp. Derivative Litigation* (N.D.Cal. 2007) 511 F.Supp.2d 986 [corporation and individual defendants moved to dismiss for lack of standing; unclear if corporation joined in part of motion challenging whether plaintiff stated claims—no discussion whether corporation would have right to do so]; *Opici v. Cucamonga Winery* (S.D.Cal. 1947) 73 F.Supp. 603 [same, except motion challenged personal jurisdiction instead of standing].)

[6] Alacer also relies upon cases in which federal courts determined diversity jurisdiction in derivative actions by "realigning" nominal defendant corporations as plaintiffs. These cases do not speak to whether a corporation may defend the merits of a derivative action. (See *Smith v. Sperling* (1957) 354 U.S. 91, 93 [1 L.Ed.2d 1205, 77 S.Ct. 1112]; *Indianapolis v. Chase National Bank* (1941) 314 U.S. 63, 69 [86 L.Ed. 47, 62 S.Ct. 15]; *Liddy v. Urbanek* (11th Cir. 1983) 707 F.2d 1222, 1224; cf. *Van Gelder v. Taylor* (N.D.Ill. 1985) 621 F.Supp. 613, 620–622 [looking to corporation's residence when deciding venue].)

served with notice of appeal from judgment in derivative action voiding defendant's shares of corporation's stock]; *Corey v. Independent Ice Co.* (1917) 226 Mass. 391 [115 N.E. 488, 489–490] [corporation could defend itself against derivative action seeking to overturn corporate reorganization and threatening refund of stock sale proceeds]; *Godley v. Crandall & Godley Co.* (N.Y.App.Div. 1917) 181 A.D. 75 [168 N.Y.S. 251, 254] ["Ordinarily . . . there will be no occasion to spend considerable sums of the corporation's money to defend against [a derivative] action brought for its benefit . . ."; corporation permissibly defended derivative action seeking to place it in receivership]; *Kirby v. Schenck* (Sup.Ct. 1941) 25 N.Y.S.2d 431, 432–433 [denying plaintiff's summary judgment motion in derivative action challenging corporation's defense of officers and directors in a prior derivative action; record on summary judgment did not disclose whether prior action "so injuriously threatened or involved" corporation's own interests "as to justify it in retaining and paying counsel to protect its interests"]; *National Bankers Life Insurance Company v. Adler* (Tex.Civ.App. 1959) 324 S.W.2d 35, 37 ["If the derivative action threatens rather than advances the corporate interests, the corporation may actually defend the action."]; see also *id.* at p. 38 ["If the court at an early stage of trial cannot determine who is the actual plaintiff then the corporate defendant should be permitted to raise the venue matter and to answer."].) This exception may well exist under California law, or it may not. We need not decide this here, as Alacer does not assert any viable basis for invoking such an exception.

Finally, Alacer worries about a hypothetical situation in which the corporation must "sit idly by" while a shareholder pursues a patently meritless derivative claim. But that is not our situation—the Director defendants demurred to plaintiff's complaint on similar grounds as Alacer. Moreover, Alacer has not shown what harm the corporation would incur in the hypothetical case. If the corporation opposes the action for any legitimate business reason, its disinterested directors may assert the SLC defense. (*Desaigoudar, supra,* 108 Cal.App.4th at p. 185; *Finley, supra,* 80 Cal.App.4th at p. 1158.) And if the corporation chooses not to assert the SLC defense, no substantial harm appears to befall the corporation from "merely awaiting the outcome and reaping the fruits of any judgment for plaintiffs."[7] (*Rowen, supra,*

---

[7] The parties have not briefed the effect, if any, of a corporation's right or potential duty to indemnify directors, officers, or agents for expenses incurred in defending or defeating a derivative action. (Corp. Code, § 317, subds. (c) [limited right to indemnify agent against expenses incurred defending or settling derivative action], (d) [duty to indemnify agent against expenses incurred succeeding on the merits against derivative action].) If the expected indemnity expense renders it an unwise business judgment for the corporation to "sit idly by" (to use Alacer's phrase) while litigation progresses, the corporation may avail itself of the SLC defense.

282 N.W.2d at p. 645.) Other than contesting plaintiff's standing, this is exactly what Alacer should do here.

*Plaintiff Has Standing As a Beneficial Shareholder to Assert the Derivative Claims*

We turn now to the one cognizable ground for Alacer's demurrer to the derivative causes of action: plaintiff's alleged lack of standing. To have standing, plaintiff must allege she "was a shareholder, of record or beneficially . . . at the time of the [relevant] transaction" (Corp. Code, § 800, subd. (b)(1)), and made demand upon the board (Corp. Code, § 800, subd. (b)(2)). Alacer first contends plaintiff did not allege she was either a record or beneficial Alacer shareholder.

 But plaintiff alleged a community property interest in Alacer. She alleged she and her husband both devoted substantial time and effort during their marriage to creating Alacer's vitamin supplements and developing its business. "[L]ong ago our courts recognized that, since income arising from [a spouse's] skill, efforts and industry is community property, the community should receive a fair share of the profits which derive from the [spouse's] devotion of more than minimal time and effort to the handling of [his or her] separate property." (*Beam v. Bank of America* (1971) 6 Cal.3d 12, 17 [98 Cal.Rptr. 137, 490 P.2d 257].) "The community is entitled to the increase in profits attributable to community endeavor," regardless of which spouse's efforts and separate property are involved. (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 851–852 [21 Cal.Rptr.2d 642] [community entitled to increased profits generated by husband's efforts for wife's separate property company].) Thus, even if Alacer was initially her husband's separate property, plaintiff may have acquired a community property interest in it through their alleged joint devotion of time and effort to it during their marriage. (*Beam, supra,* 6 Cal.3d at p. 17; *Dekker, supra,* 17 Cal.App.4th at p. 852.) Plaintiff alleges the increase in value of the Alacer stock, in excess of that attributed to a fair return on her husband's original investment, is community property. And the Trust directs the trustees to satisfy this community property interest by transferring Alacer stock to plaintiff.

For purposes of the demurrer, assuming as we must the truth of the allegations, plaintiff's alleged community property interest in Alacer potentially renders her a beneficial shareholder. "[C]ourts in California have historically given derivative suit standing requirements a liberal construction." (*Pearce v. Superior Court* (1983) 149 Cal.App.3d 1058, 1066 [197 Cal.Rptr. 238].) The Legislature extended standing from record owners to beneficial owners as part of "the 1975 liberalization of the standing requirements," designed to bring California in line with the majority rule that " 'it is

sufficient that the plaintiff be an equitable shareholder or unregistered owner of shares.' " (*Id.* at p. 1065; accord, *Daly, supra,* 131 Cal.App.4th at p. 61 ["equitable ownership may confer standing upon a plaintiff to sue derivatively . . ."].) While the Trust may be the only record shareholder, plaintiff's alleged community property interest in Alacer, if true, essentially makes her an unregistered Alacer shareholder. Plaintiff's community property interest in Alacer satisfies the "liberal" standing requirement of beneficial ownership. (*Pearce, supra,* 149 Cal.App.3d at p. 1066.)

Defendant wrongly contends plaintiff lacks beneficial ownership because no court has yet adjudicated her community property claim. It likens her interest in Alacer to an unexercised stock option or undistributed inheritance. (See *Daly, supra,* 131 Cal.App.4th at p. 61 [stock option holder " 'is not an equitable shareholder of the corporation' "]; *Klopstock, supra,* 17 Cal.2d at p. 17 [legatee of shares lacks derivative standing; applying stricter, pre-1975 standing requirement].) Not so. "The respective interests of the husband and wife in community property during continuance of the marriage relation are *present*, existing, and equal interests." (Fam. Code, § 751, italics added; cf. *D'Elia v. D'Elia* (1997) 58 Cal.App.4th 415, 427 [68 Cal.Rptr.2d 324] (*D'Elia*) [spouses had equal interest in stock by "operation of California's community property laws"].) Plaintiff's alleged community property interest was created during their marriage. She allegedly has a present and existing interest in Alacer stock already—she does not need to do anything to trigger her interest. And while a court may *confirm* her community property interest, it cannot *create* it. At any rate, plaintiff seeks such confirmation here in her declaratory relief cause of action.

Defendant misplaces its reliance on the terms of the Trust, claiming it does not make plaintiff a beneficiary.[8] This much is true—plaintiff is not a trust beneficiary. A beneficiary is "a person to whom a donative transfer of property is made . . . , and: [¶] . . . [¶] (c) As it relates to a trust, means a person who has any present or future interest, vested or contingent." (Prob. Code, § 24, subd. (c).) Plaintiff claims she has a community property interest in Trust assets, the Alacer stock, and that the Trust directs the trustees to distribute no more than 46 percent of the Alacer shares to her to satisfy any community property interest she may have in the stock. This alleged interest might satisfy the requirement that she have a "present or future interest, vested or contingent." (*Ibid.*)

But plaintiff's alleged community property interest does not satisfy the requirement for a "donative transfer of property." (Prob. Code, § 24.) "The respective interests of the husband and wife in community property during

---

[8] The court took judicial notice of the Trust, which plaintiff had attached to a complaint in another action.

continuance of the marriage relation are present, existing, and equal interests." (Fam. Code, § 751.) If plaintiff has a community property interest in the Trust's Alacer stock, then her husband, by directing the trustees to issue Alacer shares to plaintiff to satisfy her community property interest (if any), would not be giving plaintiff anything to which she is not already entitled. Any community property interest she has in the Alacer stock is already "present" and "existing," regardless of the Trust's distribution provision. Transferring Trust assets to satisfy an existing obligation is the antithesis of a *donative* transfer.

The plain language of the Trust amendment shows a *restriction* on the trustees' ability to transfer Alacer stock to plaintiff, not a donative transfer. The amendment notes plaintiff's husband's "pending dissolution of marriage from my wife, Ymelda," his "desire that [plaintiff] not obtain or have control of a majority of the shareholder interest of Alacer, because of her inability to properly run the business," and his "intention that of my entire estate [plaintiff] receive nothing of my separate property and only receive her community share of our community property, if any." It directs the trustees to "distribute not more than 46% of the shares now held in my name to Ymelda, as her community share of my entire estate," but only if "at the time of my death [she has] a community property interest in the stock of Alacer." And it directs the trustees to satisfy any remaining community property interest plaintiff may have with assets "from my estate as probated by the court and that it not be Alacer stock." Plaintiff's husband thereby limited the trustees to satisfying plaintiff's community property interest with no more than 46 percent of the Alacer stock.[9] He did not make a gift of his separate property to plaintiff. There was no donative transfer of property to plaintiff.

Thus, defendant confuses being a trust beneficiary with being a beneficial shareholder. Plaintiff is a beneficial shareholder of Alacer because she alleges a community property interest in the Alacer stock held by the Trust. Through her alleged community property interest, plaintiff is already entitled to some of the Alacer stock held in the Trust's name. (Fam. Code, § 751; *D'Elia, supra,* 58 Cal.App.4th at p. 427.) Although the Trust contains no *donative* transfer of property to plaintiff, and in fact restricts the trustees' ability to transfer Alacer stock to plaintiff to satisfy her community property interest, the Trust does not and cannot defeat her alleged beneficial ownership.

Plaintiff did not waive her standing as a beneficial shareholder by asserting her standing claim in amended complaints. The court had rejected plaintiff's beneficial shareholder claim in sustaining Alacer's demurrer to the second amended complaint. Plaintiff responded by filing the third amended complaint in which she continued to assert beneficial shareholder standing, but added allegations purporting to grant her standing as a trustee and Alacer director.

---

[9] We express no opinion regarding the validity of the Trust's restriction in the event plaintiff's community property interest exceeds 46 percent.

Defendant contends plaintiff conceded the demurrer's merit—i.e., that her beneficial shareholder claim lacked merit—by amending her complaint to allege new standing theories. (*Sheehy v. Roman Catholic Archbishop* (1942) 49 Cal.App.2d 537, 540–541 [122 P.2d 60] ["When [the plaintiff] amended his complaint after the general demurrer was sustained he in effect admitted that the demurrer was good and that his complaint was insufficient to state a cause of action."].) We doubt the rule applies here, because plaintiff did not abandon her beneficial shareholder claim in response to the sustained demurrer. She stood by her claim, merely bolstering it by asserting two additional theories. And even if the rule does apply, we exercise our discretion to reach the issue. (*Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 749, fn. 4 [53 Cal.Rptr.3d 203] [reaching standing issue rejected by trial court on demurrer and reasserted in amended complaint]; *Sommer v. Gabor* (1995) 40 Cal.App.4th 1455, 1468 [48 Cal.Rptr.2d 235] [court has discretion to reach legal issue waived below].)

Because plaintiff satisfied the first condition of standing by alleging she is a beneficial shareholder, we turn to the second condition: demand on the board. (Corp. Code, § 800, subd. (b)(2).) Plaintiff satisfied this condition by alleging, "in November 2003, [she] delivered to the Board of Directors a true copy of the Complaint which Plaintiff proposed to file and demanded that the Board take such actions necessary for the corporation to prosecute the cause of action against the [Director] Defendants." Plaintiff makes this allegation with sufficient particularity. (Corp. Code, § 800, subd. (b)(2); *Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 587 [113 Cal.Rptr.2d 255].) Defendant contends this allegation is insufficient to give her standing *as a trustee* because plaintiff did not make her demand on behalf of the Trust. Because plaintiff has standing as a beneficial shareholder, not a trustee, she had no need to make the demand on behalf of the Trust.

Thus, plaintiff has standing as a beneficial Alacer shareholder to assert derivative claims. The court erred in sustaining Alacer's demurrer to the shareholder derivative causes of action on the ground that plaintiff lacked standing. For those paragraphs of the demurrer challenging the derivative claims on the merits, the court should have stricken these paragraphs on its own motion. (See § 436, subd. (a) ["The court may . . . at any time in its discretion, and upon terms it deems proper: [¶] (a) Strike out any irrelevant . . . or improper matter inserted in any pleading."].)[10]

---

[10] For the benefit of the parties and the court, paragraph 1 of Alacer's demurrer, challenging all derivative causes of action on standing grounds, must be overruled. Paragraph 2, challenging plaintiff's standing to sue on behalf of the Trust, and 3, asserting that no cause of action is stated on behalf of the Trust, must be stricken as irrelevant. Plaintiff sues on behalf of Alacer in the derivative claims and on behalf of herself on the balance of the complaint. Likewise, paragraphs 5 through 8, challenging the derivative causes of action

*The Court Correctly Sustained the Demurrer to the Declaratory Relief Claim, but Should Have Granted Leave to Amend*

Plaintiff added one entirely new cause of action in the third amended complaint: the sixth cause of action for declaratory relief. Plaintiff sought a declaration that plaintiff has a community property interest in Alacer shares. Because this is the cause of action by which plaintiff may prove her standing to sue derivatively on behalf of Alacer, Alacer has standing to challenge the sufficiency of the allegations. Alacer challenges this cause of action on two grounds. While the second ground asserted by Alacer has merit, plaintiff should have leave to amend to remedy the error.

First, Alacer contends plaintiff could not add a new cause of action to the third amended complaint. It claims the order sustaining the demurrer to the prior complaint with leave to amend granted plaintiff leave to amend *only the causes of action asserted in the prior complaint*, not leave to add entirely new causes of action. (*People ex rel. Dept. Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785 [57 Cal.Rptr. 227] ["such granting of leave to amend [in an order sustaining a demurrer] must be construed as permission to the pleader to amend the cause of action which he pleaded in the pleading to which the demurrer has been sustained"].)

This rule is inapplicable here because the new cause of action directly responds to the court's reason for sustaining the earlier demurrer. The court found plaintiff failed to allege she had standing as a beneficial shareholder of Alacer to bring shareholder derivative claims. The new declaratory relief cause of action supports her standing claim by seeking a declaration that she has a community property interest in Alacer—i.e., that she is a beneficial shareholder of Alacer. Plaintiff may not have been free to add any cause of action under the sun to her complaint, but the court should have allowed her to add *this* cause of action to establish her standing.

█ Second, defendants contend plaintiff failed to join indispensable parties to the declaratory relief cause of action. "Where a number of persons have undetermined interests in a trust fund and one of them, *acting adversely to the others, seeks to recover the whole, to fix his share, or recover a portion claimed by him*, the other persons are indispensable parties." (*Hebbard v. Colgrove* (1972) 28 Cal.App.3d 1017, 1026 [105 Cal.Rptr. 172] (*Hebbard*); accord, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶ 2:165, p. 2-44.1.) The Trust directs the trustees to distribute Alacer shares to plaintiff, defendant Ronald J. Patrick, Alice Patrick

on the merits must be stricken. Paragraphs 4 and 9 of Alacer's demurrer, challenging the first and sixth causes of action for fraud and declaratory relief respectively are addressed separately in this opinion.

Nigl (the daughter of plaintiff's husband), and to either "the issue of [plaintiff's husband] and [plaintiff]" (as alleged in the complaint) or plaintiff's husband's "lineal issue" (as set forth in the Trust, of which the court took judicial notice).

The court correctly sustained the demurrer for plaintiff's failure to join indispensable parties, namely, Alice Patrick Nigl and plaintiff's husband's lineal issue. (§ 430.10, subd. (d) [defendant may demur for defect in parties]; see also *Hebbard, supra*, 28 Cal.App.3d at p. 1026.) But it erred by denying leave to amend. Nothing on this record suggests plaintiff will be unable to name the indispensable parties as defendants in an amended complaint. She should have leave to name them.

### Plaintiff Cannot State the Fraud Cause of Action

Notwithstanding the limitations on Alacer's right to challenge the derivative claims brought on its behalf, nothing restricts Alacer from demurring to direct claims against it. Plaintiff asserts one such cause of action.

Plaintiff's fraud cause of action is a direct claim against Alacer.[11] " '[T]he action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' " (*Jones, supra*, 1 Cal.3d at p. 106.) In the fraud cause of action, plaintiff alleged the Director defendants misrepresented their intentions to serve as directors on an interim basis and for limited compensation, and that she relied upon the misrepresentations in voting them onto the board. As a result, she alleges, defendants fired her and ceased various benefits she received from Alacer. The gravamen of this claim is injury to plaintiff herself, not to Alacer or its shareholders as a group. (*Id.* at p. 107.) Her extraneous allegations about the Director defendants' conflicts of interest and excessive spending do not make this a derivative claim.

The court correctly sustained the demurrer to the fraud cause of action without leave to amend because plaintiff cannot allege causation. " 'In

---

[11] The first cause of action is mislabeled conspiracy to defraud. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (*Applied Equipment Corp. v Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511 [28 Cal.Rptr.2d 475, 869 P.2d 454].) The cause of action here is for fraud. The charging allegations are directed against the Director defendants acting in their capacity as trustees. It is unclear how plaintiff intended to attribute their acts to the corporation, but, as shown below, the fraud cause of action fails in any event because plaintiff cannot allege causation.

an action for [common law] fraud, damage is an essential element of the cause of action.' [Citation.] 'Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages.' " (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 202 [132 Cal.Rptr.2d 490, 65 P.3d 1255].) "At the pleading stage, the complaint 'must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated.' " (*Ibid.*) " 'Assuming . . . a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes.' " (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 365 [17 Cal.Rptr.3d 39], italics omitted (*Goehring*) [student's damages caused by dismissal from school, not misrepresentations inducing him to enroll]; *Gagne v. Bertran* (1954) 43 Cal.2d 481, 491–492 [275 P.2d 15] (*Gagne*) [property owner's damages caused by soil conditions, not misrepresentations inducing him to buy property].)

Plaintiff has not and cannot allege a causal connection between the Director defendants' misrepresentations and her damages. She alleges the Director defendants comprised three of the five trustees of the Trust. They therefore controlled the voting power of the Trust. They could have installed themselves as Alacer directors by majority vote. (*Edwards v. Edwards* (1998) 61 Cal.App.4th 599, 602–603 [71 Cal.Rptr.2d 653] [voting of shares held by trust governed by majority vote of trustees]; Corp. Code, § 704.) The Trust document has no language to the contrary. Thus, the Director defendants simply did not need plaintiff's vote. And so plaintiff's alleged injury was not caused by the Director defendants' alleged misrepresentations that induced her vote, but by actions they could have taken anyway. (Cf. *Goehring, supra,* 121 Cal.App.4th at p. 365 [misrepresentations did not cause damages]; *Gagne, supra,* 43 Cal.2d at pp. 491–492 [same].)

Plaintiff deems this analysis speculative. Not so. What is speculative is any causal connection between the Director defendants' alleged misrepresentations and her alleged damages, once her vote is shown to be superfluous.

## DISPOSITION

The judgment of dismissal in favor of Alacer is reversed. The matter is remanded with directions to the court to vacate its order sustaining Alacer's demurrer to the third amended complaint.

The court is further directed to enter a new order (1) sustaining the demurrer to the fraud cause of action without leave to amend, (2) striking Alacer's demurrer to the derivative causes of action for breach of fiduciary duties, constructive trust, injunctive relief, and unfair business practices, (3) overruling Alacer's overarching demurrer asserting plaintiff's lack of standing, and (4) sustaining Alacer's demurrer to the declaratory relief cause of action but granting plaintiff leave to amend.

Plaintiff shall recover her costs on appeal.

Sills, P. J., and O'Leary, J., concurred.

Petitions for a rehearing were denied November 21, 2008, and the opinion was modified to read as printed above. The petitions of both appellant and respondent for review by the Supreme Court were denied January 28, 2009, S168593. George, C. J., did not participate therein.