[No. G044589. Fourth Dist., Div. Three. Nov. 16, 2011.]

YMELDA T. PATRICK, Plaintiff and Appellant, v.
ALACER CORPORATION et al., Defendants and Appellants.

1328

## COUNSEL

Hess-Verdon & Associates, Jillyn Hess-Verdon and Edward L. Laird for Plaintiff and Appellant.

Bremer Whyte Brown & O'Meara and Jeremy S. Johnson for Defendant and Appellant Alacer Corporation.

Lewis Brisbois Bisgaard & Smith and Gary M. Lape for Defendant and Appellant James Turner.

Suzanne M. Tague, in pro. per., as guardian ad litem etc., for Defendants and Appellants.

Hinojosa & Wallet and Jeffrey Forer for Defendant and Appellant Thaddeus Smith.

Pistone & Wolder and Aaron C. Watts for Defendant and Appellant Alice Patrick Nigl.

Rutan & Tucker and Theodore I. Wallace, Jr., for Defendant and Appellant Ronald Patrick.

## OPINION

**IKOLA, J.**—We return to the long-running dispute regarding Alacer Corporation (Alacer), maker of the popular Emergen-C vitamin supplements. After company founder James W. "Jay" Patrick died in 2003, ample litigation ensued. Much involves Jay's wife, plaintiff Ymelda T. Patrick, and her claim to Alacer stock held by his trust.

Plaintiff appeals from the judgment on her causes of action against Alacer, its directors, the trustees, and the trust beneficiaries. In a bifurcated declaratory relief cause of action, she asked the court to determine her community property interest in Alacer stock. The court found the Alacer stock was Jay's separate property, but plaintiff had a community property interest in its increased value during the marriage. It awarded one-half—over $3.2 million—to her, plus prejudgment interest. The court later granted judgment on the pleadings for defendants on the remaining causes of action. It found all were based on plaintiff's alleged community property interest in Alacer—but her interest was only in Alacer's increased value, not the Alacer stock itself.

Plaintiff asserts four main errors. She contends the court wrongly valued Alacer at the time of Jay's death, instead of the time of trial. She claims it used the wrong valuation method. She maintains it should have awarded her Alacer stock. And she contends it wrongly entered judgment on the pleadings against her.

Defendants cross-appeal. They contend plaintiff's declaratory relief cause of action was time-barred. They claim the community had no interest in Alacer's increased value. And they assert the court wrongly awarded prejudgment interest.

We affirm. First, plaintiff's declaratory relief cause of action was not time-barred. Next, sufficient evidence shows a community property interest existed in Alacer's increased value, which the court permissibly valued and apportioned. Plaintiff was not entitled to Alacer stock, but could recover prejudgment interest. Finally, the court correctly entered judgment on the pleadings.

FACTS

*Alacer and the Trust*

Jay founded Alacer in 1972. He met plaintiff in 1975. They married in 1988.

Jay transferred all Alacer shares to a revocable trust in 2000. The trustees were Jay, plaintiff, defendants James Turner, Thaddeus Smith, Ronald Patrick, and another person who later resigned.[1]

Jay amended the trust's "Distribution upon Death" provision in January 2001. The amendment provided: "(1) Because of the pending dissolution of marriage from my wife, Ymelda, her claims of a community property interest in my Alacer stock, and my desire that she not obtain or have control of a majority of the shareholder interest of Alacer, because of her inability to properly run the business, I direct that upon my death, if I am still married to Ymelda and she has at the time of my death a community property interest in the stock of Alacer, that the trustees distribute not more than 46% of the shares now held in my name to Ymelda, as her community share of my entire estate and that the balance of any community property interest that she may have in the Alacer stock or the community property owned by us be distributed to her from my estate as probated by the court and that it not be Alacer stock. It is my intention that of my entire estate she receive nothing of my separate property and only receive her community share of our community property, if any. [¶] (2) I direct the trustees to distribute 25% of my Alacer stock to my son, Ronald J. Patrick. [¶] (3) I direct the trustees to distribute 4% of my Alacer stock to my daughter, Alice, and (4) I direct the trustees to hold the remainder of my Alacer stock to be distributed, 21 years after the death of my youngest living grandchild, equally to my then living lineal issue."

---

[1] "Jay" refers to Alacer founder James W. Patrick. "Plaintiff" refers to plaintiff Ymelda Patrick. "Patrick" refers to Jay's son, defendant Ronald Patrick.

Jay died in February 2003. Thereafter, the trustees elected themselves to Alacer's board of directors.

*The* Alacer *and* Turner *Decisions*

Plaintiff filed the initial complaint in this action in December 2003. In a third amended complaint, plaintiff asserted direct and shareholder derivative claims against Alacer, Smith, Turner, and Patrick. Plaintiff alleged she and Jay built Alacer together, both before and during their marriage, and that she had a community property interest in the Alacer stock.

The third amended complaint led to two appellate opinions: *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995 [84 Cal.Rptr.3d 642] (*Alacer*) and *Patrick v. Turner* (G037607, Oct. 22, 2008) (nonpub. opn.) (*Turner*).

In *Alacer*, we affirmed in part the judgment dismissing Alacer after the court sustained its demurrer without leave to amend. (*Alacer, supra,* 167 Cal.App.4th at pp. 1017–1018.) We held the court correctly sustained the demurrer to the fraud cause of action because plaintiff could not allege causation. (*Id.* at p. 1017.)

But we also reversed in part in *Alacer*. Our holdings still reverberate.

At the outset, we held Alacer could not demur to shareholder derivative claims plaintiff brought on its behalf, except on limited grounds related to standing. "[A] nominal defendant corporation generally may not defend a derivative action filed on its behalf. The corporation may assert defenses contesting the plaintiff's right or decision to bring suit . . . ." (*Alacer, supra,* 167 Cal.App.4th at p. 1005.)

Yet plaintiff alleged standing to assert the derivative claims, we held— "assuming as we must the truth of the allegations," and giving the " 'derivative suit standing requirements a liberal construction.' " (*Alacer, supra,* 167 Cal.App.4th at pp. 1011–1012.) We noted plaintiff "alleged she and [Jay] both devoted substantial time and effort during their marriage to creating Alacer's vitamin supplements and developing its business." (*Id.* at p. 1011.) If true, we held "plaintiff may have acquired a community property interest in [Alacer] through their alleged joint devotion of time and effort to it during their marriage. [Citations.] Plaintiff alleges the increase in value of the Alacer stock, in excess of that attributed to a fair return on her husband's original investment, is community property. And the Trust directs the trustees to satisfy this community property interest by transferring Alacer stock to plaintiff. [¶] . . . While the Trust may be the only record shareholder,

plaintiff's alleged community property interest in Alacer, if true, essentially makes her an unregistered Alacer shareholder." (*Id.* at pp. 1011–1012.)

Finally, we held the court wrongly entered judgment against plaintiff on her declaratory relief cause of action, in which she "sought a declaration that [she] has a community property interest in Alacer shares." (*Alacer, supra,* 167 Cal.App.4th at p. 1015.) Plaintiff was allowed to add that cause of action for the first time in the third amended complaint because it "directly respond[ed] to the court's reason for sustaining [an] earlier demurrer"—plaintiff's lack of "standing as a beneficial shareholder of Alacer." (*Ibid.*) The court correctly sustained the demurrer because plaintiff failed "to join indispensable parties, namely, Alice Patrick Nigl and [Jay's] lineal issue." (*Id.* at p. 1016.) But it should have granted plaintiff leave to amend to add these parties. (*Ibid.*)

In *Turner,* we reviewed the judgment as to the individual defendants. (*Turner, supra,* G037607.) We affirmed judgment for them on the fraud cause of action because plaintiff could not allege causation. (*Ibid.*) We reversed judgment for them on the declaratory relief cause of action, holding plaintiff should have leave to amend to add the indispensable parties. (*Ibid.*) And we reversed judgment for them on causes of action for breach of fiduciary duty, constructive trust, injunction, and unfair business practices, holding plaintiff sufficiently stated these claims. (*Ibid.*)

We also affirmed orders on several consolidated probate petitions. (*Turner, supra,* G037607.) We held the court permissibly removed plaintiff as a trustee because " '[t]he removal . . . of a trustee is largely within the discretion of the trial court,' and the court did not abuse its discretion by removing plaintiff for trying to dissolve and liquidate Alacer, the trust's only asset." (*Ibid.*)

And because plaintiff was no longer a trustee, she lost standing to assert her own probate petitions. (*Turner, supra,* G037607.) We rejected her claim to standing as a trust beneficiary, noting the trust made "no donative transfer of property to [her]." (*Ibid.*) Plaintiff did not allege Jay made "a gift of his separate property to [her]" on the trust. (*Ibid.*) Rather, plaintiff alleged she already had an existing community property interest in Alacer's increased value that must be satisfied by the transfer of Alacer shares. (*Ibid.*) If all this were found to be true, "then [Jay], by directing the trustees to issue Alacer shares to plaintiff to satisfy her community property interest (if any), would not be giving plaintiff anything to which she is not already entitled. . . . Transferring trust assets to satisfy an existing obligation is the antithesis of a *donative* transfer." (*Ibid.*)

*Remand, Trial, and the Underlying Judgment*

After adding the indispensable parties as defendants in a fourth amended complaint, plaintiff filed the operative fifth amended complaint. She asserted

direct causes of action for impairment of community property, constructive trust, breach of fiduciary duty, and injunctive relief, as well as shareholder derivative causes of action for breach of fiduciary duty and injunctive relief.

Plaintiff also reasserted a declaratory relief cause of action. She sought a declaration of her "community property and stock ownership interest in Alacer." The court bifurcated this cause of action, staying discovery on the others.

After a bench trial on the bifurcated declaratory relief cause of action, the court (Judge Tucker) issued its 17-page final statement of decision in July 2010. It made nine notable express findings.

First, plaintiff's cause of action was timely. The court found "the declaratory relief cause of action essentially arises out of Family Code § 1101[, subdivision] (b)," which authorizes it to " 'determine the rights of ownership in . . . community property, and the classification of all property of the parties to a marriage.' " Analyzing Family Code, section 1101,[2] the court concluded: "by stating that, upon death, an action may be brought 'without regard' to the three-year limitation, the language [of section 1101] indicates that no limitations period applies." Because no limitation period governed plaintiff's claim, the only time restriction would be laches, which defendants failed to establish.

Second, Alacer was Jay's separate property. The evidence showed Jay founded Alacer and was its sole shareholder before he married plaintiff. No evidence showed any transmutation. Nor did Alacer somehow lose its separate property status by being "commingled" with community property—i.e., Jay's purportedly undercompensated work for Alacer during the marriage. His compensation does not "affect[] an apportionment analysis" or "transmute separate property into community property."

Third, some portion of Alacer's increased value must be equitably apportioned to the community. Alacer indisputably increased in value during the marriage, and Jay "put much more than minimal efforts into the business." His efforts during the marriage were community efforts.

Fourth, Alacer's value would be apportioned using the method in *Pereira v. Pereira* (1909) 156 Cal. 1 [103 P. 488] (*Pereira*). Courts use this approach when " 'business profits are principally attributed to efforts of the community.' " On the other hand, when " 'the business profits accrued are attributed to the character of the separate asset,' " courts use the method in *Van Camp v.*

---

[2] All further statutory references are to the Family Code unless otherwise stated.

*Van Camp* (1921) 53 Cal.App. 17 [199 P. 885] (*Van Camp*). Here, "Alacer's growth was the result of a combination of Jay Patrick's efforts and the intrinsic value of the separate property business . . . ." Given this, "substantial justice is best accomplished by use of the *Pereira* formula, paying careful attention to the valuation methodology and the capitalization rate used in the methodology." Accordingly, the court would apply *Pereira* and "calculate[] a fair return on [Jay's] separate property investment in the business," with "the remainder belong[ing] to the community."

Fifth, the fair return on Jay's separate property investment in Alacer was about $530,000. The parties' experts used slightly different methods to determine Alacer's value at the October 1988 date of marriage, but defendant's expert agreed it would be appropriate to use the average of their values—just over $250,000. The experts agreed a fair rate of return would be 7.68 percent per annum through Jay's death in February 2003. Applying that return to Alacer's value at marriage resulted in a separate property interest of just over $530,000.

Sixth, Jay's February 2003 date of death would be used to value the remaining community property interest in the Alacer stock. While community property is generally valued at the date of trial, Alacer was Jay's separate property. The only community property here was "the skill, effort and talent of Jay Patrick that was expended during the marriage. Hence, the court must value that skill, effort and ability from the time the marriage began until Jay died. To state the obvious, when Jay passed away, he no longer contributed any community skill, effort, or talents to increase the value of Alacer."

Seventh, Alacer's value at Jay's death was just under $7 million. The court adopted defendant's expert's use of the "capitalization of excess earning" methodology, which the expert described "as the 'primary' or 'most widely used' valuation methodology . . . ." It rejected that expert's attempt to average the result of that methodology with the significantly lower result of "capitalized cash flow method," as he "offered no explanation as to why an average would be appropriate in this case." And the court rejected plaintiff's expert's reliance on a 2006 bank valuation that led to results that "fluctuated wildly"—$19 million (low end), $73 million (high end), $46 million (initial average), $30 million ("corrected" average). Besides, plaintiff's expert has also used the "capitalization of excess earning" methodology to value Alacer at the date of marriage. Adding "the value of Alacer business assets using the excess earnings method" and "the value of non-income producing assets" yielded a total value of just under $7 million. Deducting about $530,000 for Jay's return on his separate property investment left a community interest of just under $6.5 million. Plaintiff's 50 percent share of the community was just over $3.2 million.

Eighth, plaintiff was entitled to prejudgment interest starting at Jay's death. Her "community property interest existed as of the date of Jay's death" in February 2003, and she had "lost the use of her share of the community property" ever since.

Finally, the trial court ruled that plaintiff was not entitled to receive Alacer shares to satisfy her community property interest. The court recognized that plaintiff had alleged "standing as a beneficial shareholder to bring her derivative causes of action." And as *Alacer* held, "[i]t is clear that, *if Alacer were a community property business*, plaintiff would have a 'present, existing, and equal' community property interest as a stockholder in Alacer." But the court appropriately did not reach the merits to determine whether Alacer was a community property business. That was the trial court's duty and, after the bench trial on the declaratory relief cause of action, the court found the Alacer stock was Jay's separate property. "Plaintiff's community interest prior to Jay's death was in one half of the profits arising from the skill, efforts and industry he applied during the marriage to increase the value of his separate property business. His death does not transform Alacer into a community property business or transform plaintiff's right into one for stock ownership." (Fn. omitted.)

With the declaratory relief cause of action resolved, the court (Judge Gastelum) granted judgment on the pleadings to defendants on the remaining causes of action. It found, "each of the [causes of actions] is based on Plaintiff's assertion she has a shareholder interest or is entitled to the stock of Alacer. [Citations.] These issues were determined adverse to Plaintiff in Phase I." The court denied plaintiff's motion for leave to amend the complaint. It entered judgment accordingly in December 2010.

## DISCUSSION

*Plaintiff's Declaratory Relief Cause of Action Was Timely*

Defendants contend plaintiff's declaratory relief cause of action was time-barred. They invoke various statutes of limitations: the three-year statute for actions "for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property" (Code Civ. Proc., § 338, subd. (c)); the two-year statute for actions on liabilities "not founded upon an instrument in writing" (Code Civ. Proc., § 339); and the one-year statute for

actions on liabilities of persons who "die[] before the expiration of the applicable limitations period" (Code Civ. Proc., § 366.2, subd. (a)). They assert plaintiff failed to join the indispensible parties within whichever limitations period applies.

The court correctly found plaintiff's declaratory relief cause of action was timely. That cause of action essentially derives from section 1101, subdivision (b), as the court noted, which provides: "A court may order an accounting of the property and obligations of the parties to a marriage and may determine the rights of ownership in, the beneficial enjoyment of, or access to, community property, and the classification of all property of the parties to a marriage." The question is what limitations period applies to claims arising from section 1101, subdivision (b).

The answer lies in section 1101, subdivision (d). It provides: "(1) Except as provided in paragraph (2), any action under subdivision (a) [allowing claims for breach of fiduciary duty] shall be commenced within three years of the date a petitioning spouse had actual knowledge that the transaction or event for which the remedy is being sought occurred. [¶] (2) An action may be commenced under this section upon the death of a spouse or in conjunction with an action for legal separation, dissolution of marriage, or nullity without regard to the time limitations set forth in paragraph (1). [¶] (3) The defense of laches may be raised in any action brought under this section."

■ Thus, no limitations period applies to claims brought pursuant to section 1101, subdivision (b), except for laches, when the marriage ends through litigation or death. The Legislature took pains in subdivision (d)(1) to set forth a three-year limitations period for claims arising under subdivision (a).[3] The Legislature made no effort in subdivision (d)(2) to set forth a corresponding limitations period for claims arising under subdivision (b). As the court aptly noted below, "Having evidenced a concern with statute of limitation issues, and having just provided a 3-year limitations period in section 1101[, subdivision] (d)(1), had the legislature intended a particular statute of limitations to apply upon death, it would have so stated." But instead, the plain language of subdivision (d)(2) provides that "[a]n action may be commenced under this section upon the death of a spouse . . . without regard to the time limitations set forth in paragraph (1)." In other words, the Legislature set forth a limitations period and immediately clarified that period's own limit.[4]

---

[3] We deny plaintiff's request to take judicial notice of section 1101's legislative history as irrelevant. We similarly deny defendants' request to take judicial notice of the docket from Jay and plaintiff's dissolution.

[4] As the court also noted, a leading commentator similarly concludes "a § 1101 remedy may be pursued at *any* time—*without regard to the three-year limitations period*—(i) upon the

Defendants contend section 1101, subdivision (d)(2)'s exception does not apply to claims arising pursuant to subdivision (b). They note subdivision (d)(1) sets forth a limitation only for claims arising pursuant to subdivision (a), and so the exception in subdivision (d)(2) must apply only to those claims. This reads out of subdivision (d)(2) the reference to actions "under this section." "This section" is section 1101, both subdivisions (a) and (b). When the Legislature wanted to refer only to one subdivision of section 1101, it did so unambiguously—as it did in subdivision (d)(1), which set the three-year limitations period for "any action under subdivision (a)."

█ "The absence of a limitations period for particular causes of action is not without precedent," as the court observed. If anything, it is entirely understandable for no limitations period to govern the determination of community property after a marriage ends. A spouse's interest in community property during marriage is "present[ and] existing." (§ 751.) When the marriage ends, the spouses hold any unadjudicated community property as tenants in common. (*Berry v. Berry* (1989) 216 Cal.App.3d 1155, 1159 [265 Cal.Rptr. 338].) And "[t]he statute of limitations never bars relief between tenants in common in an action of partition." (*Adams v. Hopkins* (1904) 144 Cal. 19, 27 [77 P. 712].) Thus, no limitations period applies to actions to partition and account for the community's interest in vested retirement benefits. (*Sangiolo v. Sangiolo* (1978) 87 Cal.App.3d 511, 513 [151 Cal.Rptr. 27].) And no limitations period should apply here, where plaintiff seeks a determination of the community's interest in Alacer or its increased value.

█ Nor was the declaratory relief cause of action barred by plaintiff's failure to file a timely creditor's claim in probate.[5] (Prob. Code, § 9100, subd. (a).) Creditor's claims must be filed for " 'debts or demands against the decedent as might have been enforced against him in his lifetime by personal actions for the recovery of money, and upon which only a money judgment could have been rendered.' " (*Newberger v. Rifkind* (1972) 28 Cal.App.3d 1070, 1077 [104 Cal.Rptr. 663] [optionees need not file creditor claims to enforce options exercised after optionor's death].) Pending dissolution, plaintiff could not enforce her community property interest against Jay before his death. █ Moreover, a spouse has a "present existing interest" in community property, "not a mere money claim."[6] (*Kenworthy v. Hadden* (1978) 87 Cal.App.3d 696, 702 [151 Cal.Rptr. 169].) Thus, the community property

death of a spouse, *or* (ii) in conjunction with a legal separation, marriage dissolution or nullity action." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2011) ¶ 8:637, p. 8-158.9 (rev. # 1, 2011).)

[5] In light of this conclusion, we deny as unnecessary defendants' request to take judicial notice of pleadings showing plaintiff filed no creditor's claim.

[6] "A spouse with a community property interest . . . 'claims not as a creditor, but as an owner with a "present, existing, and equal interest." ' " (*In re Marriage of Fithian* (1977) 74 Cal.App.3d 397, 403 [141 Cal.Rptr. 506] [court may order husband to deposit with it the

interest in a spouse's partnership interest may be pursued without first filing a creditor's claim. (*Id.* at p. 703.) ■ Similarly here, no creditor's claim was necessary for plaintiff to pursue her community property interest.

*The Court Permissibly Apportioned the Community Property Interest in Alacer's Growth*

The court found the Alacer stock was Jay's separate property when he entered the marriage. But the court also found a community property interest in Alacer's increase in value during the marriage. It found the community improved Alacer through Jay's devotion of nontrivial efforts toward Alacer during the marriage. Using the *Pereira* method, the court awarded a fair rate of return to Jay's separate property investment in Alacer. After ascertaining Alacer's value at the time of Jay's death, the court awarded the balance of Alacer's increased value to the community.

No party is satisfied with the court's apportionment. Defendants contend there was no community property interest in Alacer's growth to apportion because Alacer already overcompensated Jay for efforts during the marriage. They further contend the court failed to find Jay's efforts were the primary source of Alacer's growth, and plaintiff failed to show the precise percentage of any growth attributable to Jay's efforts. Plaintiff contends the court should have valued Alacer at the time of trial, not the date of Jay's death, when apportioning the community property interest. She also contends the court should have used her expert's "capitalized cash flow" valuation method instead of the "capitalization of excess earning" method. None of these challenges withstands review.

■ An overview of community property apportioning rules provides some much needed perspective. "[I]n California, property acquired prior to marriage is separate, while property acquired during the marriage is presumed community property. [Citations.] Income from separate property is separate, the intrinsic increase of separate property is separate, but the fruits of the community's expenditures of time, talent, and labor are community property." (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850 [21 Cal.Rptr.2d 642] (*Dekker*).)

"Where community efforts increase the value of a separate property business, it becomes necessary to quantify the contributions of the separate capital and community effort to the increase." (*Dekker, supra,* 17 Cal.App.4th

community's share of his retirement pay; even if receiver may not enforce simple money judgment, "wife is not in the position of a creditor"]; see also *id.* at p. 405 [contempt sanction did not violate ban on imprisonment for debt; "wife claims her community share of the retirement pay as an owner thereof, not as a creditor"].)

at p. 851.) "[T]he necessity of apportionment arises when, during marriage, more than minimal community effort is devoted to a separate property business. [Citations.] [¶] The community is entitled to the increase in profits attributable to community endeavor. [Citations.] Accordingly, courts must apportion profits derived from community effort to the community, and profits derived from separate capital are apportioned to separate property." (*Id.* at pp. 851–852, fns. omitted.)

"Appellate review of a trial court's finding that a particular item is separate or community property is limited to a determination of whether any substantial evidence supports the finding. [Citations.] We apply the substantial evidence test . . . to the issue whether equitable apportionment should be applied to this case." (*Dekker, supra,* 17 Cal.App.4th at p. 849.)

■ "Once the court is satisfied that it should apportion business profits, the question arises which method to apply. California courts have developed two alternative approaches to allocating business profits. The *Pereira* approach is to allocate a fair return to the separate property investment and allocate the balance of the increased value to community property as arising from community efforts. [Citations.] The *Van Camp* approach is to determine the reasonable value of the community's services, allocate that amount to community property and the balance to separate property." (*Dekker, supra,* 17 Cal.App.4th at pp. 852–853, fns. omitted.)

"[C]ourts have not developed a precise standard in choosing between *Pereira* or *Van Camp,* but have endeavored to adopt that formula which is most appropriate and equitable under the circumstances. [Citation.] The court is not bound to adopt a predetermined percentage as a fair return on separate business capital, nor need it limit the community interest to a salary as reward for a spouse's efforts, but may select whichever formula will effect substantial justice between the parties. [Citation.] [¶] *Pereira* is typically applied where business profits are principally attributed to efforts of the community. [Citations.] Conversely, *Van Camp* is applied where community effort is more than minimally involved in a separate business, yet the business profits accrued are attributed to the character of the separate asset. [Citations.] The court has discretion to choose whichever formula will effect substantial justice." (*Dekker, supra,* 17 Cal.App.4th at p. 853.) Thus, "[w]e apply the abuse of discretion test to the court's application of *Pereira.*" (*Id.* at p. 849.)

Defendant's contentions fly in the face of these apportionment rules. The court has discretion to pick an apportionment method. (*Dekker, supra,* 17 Cal.App.4th at pp. 849, 853.) It found "Alacer's growth was the result of a combination of Jay Patrick's efforts and the intrinsic value of the separate

property business," and substantial evidence supports this finding.[7] The court was thus on middle ground, presented with facts between the far ends of the *Pereira-Van Camp* spectrum. (*Dekker*, at p. 853.) It exercised its discretion and found "substantial justice is best accomplished by use of the *Pereira* formula, paying careful attention to the valuation methodology and the capitalization rate used in the methodology." We see no abuse. The court was not constrained, as defendants insinuate, to using *Van Camp* by default unless the facts somehow compelled the use of *Pereira*. "The court has discretion to choose whichever formula will effect substantial justice." (*Dekker*, at p. 853.)

Having done so, the court was called upon only to determine the value of Jay's separate property interest in Alacer at the start of the marriage, and then "allocate a fair return to the separate property investment" during the marriage. (*Dekker, supra*, 17 Cal.App.4th at p. 852.) The court did so based on substantial evidence; defendants do not challenge on appeal the valuation of the separate property interest or the calculation of the return rate.

■ And having done this, the court properly then "allocate[d] the balance of the increased value to community property as arising from community efforts." (*Dekker, supra*, 17 Cal.App.4th at pp. 852–853.) It was not required to find whether plaintiff's community property interest was already satisfied by Jay's Alacer compensation during the marriage.[8] The court need not "limit the community interest to a salary as reward for a spouse's efforts . . . ." (*Id.* at p. 853.) "To limit the community to compensation received by way of salary during the marriage would ignore California's egalitarian marriage model and the apportionment formula of *Pereira* . . . ." (*Id.* at p. 854.) "[Defendants'] point, that the community received market value compensation, does not affect our inquiry. Whether or not the community received salary, a court must determine to what extent the increased value of the separate property business is attributable to community effort." (*Id.* at p. 852.) Nor was plaintiff obligated to show the precise percentage of growth attributable to Jay's efforts. Under *Pereira*, the community property award itself is essentially an implied finding of that. (See *Dekker*, at p. 854 ["Implicit in the trial court's finding that [the husband] was responsible for the increase [in business value] is a finding the [separate property] capital investment would not have returned its 927 percent increase without his efforts."].)

---

[7] Plaintiff offered evidence showing the following facts. Jay was an "iconic figure" in the nutrition industry and "indistinguishable" from Alacer, whose "presence was inseparable from the products." His "legendary" work ethic drove him to keep long hours at Alacer, where "he was involved in virtually every aspect of the company," including product development, manufacturing, business planning, marketing, and hiring. His "guidance" expanded Alacer.

[8] The parties offered conflicting evidence on the amount of Jay's total Alacer compensation during the marriage. The court found "Jay was reasonably compensated during the marriage," but aptly noted "neither under-compensation nor over-compensation during marriage affects an apportionment analysis."

And contrary to plaintiff's claim, the court properly fixed the increase in Alacer's value at Jay's death. "Upon the death of a married person, one-half of the community property belongs to the surviving spouse and the other half belongs to the decedent." (Prob. Code, § 100, subd. (a).) So plaintiff was entitled to one-half of the community's interest in Alacer's increased value "[u]pon the death of" Jay. (*Ibid.*) Thereafter, Alacer itself and any increase in its value continued to be Jay's separate property. (§ 770, subds. (a)(1), (3), (b).) Plaintiff, contending Alacer must be valued at the time of trial, relies heavily upon section 2552 and cases applying it. But its plain language renders it inapplicable here: "For the purpose of division of the community estate upon dissolution of marriage or legal separation of the parties . . . the court shall value the assets and liabilities as near as practicable to the time of trial." (§ 2552, subd. (a).) The apportionment here was not made "upon dissolution of marriage or legal separation of the parties . . . ." (*Ibid.*) And valuing Alacer's increased growth at the time of trial would essentially transform plaintiff's one-half interest in Jay's community efforts into a one-half interest in Alacer itself. That would affect an unwarranted transmutation of Jay's separate property into community property. (Cf. § 852 [transmutation requirements].)

Plaintiff complains the property division was "profoundly unequal." It was exactly equal. The court awarded 50 percent of the community property interest to plaintiff, 50 percent to Jay. Plaintiff may be disappointed she did not share in Jay's separate property interest in Alacer, but there is nothing unequal about that.

For similar reasons, the court also permissibly used the "capitalization of excess earning" method to value Alacer. Plaintiff criticizes defendant's expert for using this method and relying "solely at historical information prior to the date of valuation." Thus, the expert discounted Alacer's value for possible threats during Jay's lifetime, regardless of whether they came to pass after his death. Even so, and despite plaintiff's further flyspecking of the expert's opinion, we see no abuse of discretion in adopting the "capitalization of excess earning" method—a method that plaintiff's own expert used to value Alacer at the date of marriage. And the court reasonably rejected plaintiff's valuation, which "fluctuated wildly" from $19 million to $73 million, before settling at $30 million.

■ In sum, substantial evidence showed plaintiff had a community property interest in Alacer's increased value during the marriage, and supported apportioning that community property interest. The court acted within its discretion by using *Pereira* to apportion Alacer's value at the date of Jay's death, using the "capitalization of excess earning" method.

*Plaintiff Was Not Entitled to Alacer Stock*

Plaintiff contends that her community property interest in Alacer's increased value must be satisfied with an award of Alacer stock. She asserts several supporting theories, none of which hold water.

First, plaintiff points her finger at us. She claims our *Alacer* and *Turner* decisions established her entitlement to Alacer stock as law of the case. They do no such thing. In *Alacer*, we held plaintiff adequately alleged shareholder derivative standing. But, we did so "assuming as we must the truth of [her] allegations" and giving the " 'derivative suit standing requirements a liberal construction.' " (*Alacer, supra,* 167 Cal.App.4th at pp. 1011–1012.) So we did not question plaintiff's allegation she had a community property interest in Alacer, which "the Trust directs the trustees to satisfy . . . by transferring Alacer stock to plaintiff." (*Id.* at p. 1011.) We took that as true. In *Turner*, we held plaintiff was not a trust beneficiary because the trust did not make a donative transfer by specifying how to satisfy plaintiff's alleged community property interest in Alacer stock. (*Turner, supra,* G037607.) Again, we construed plaintiff's allegations in her favor and assumed she might somehow show a community property interest in the Alacer stock itself. But at trial, the court found the Alacer stock was Jay's separate property. Plaintiff has no "community property interest in [Jay's] Alacer stock," which is what the Trust specified should be satisfied by the transfer of Alacer stock. Nothing in *Alacer* or *Turner* required the court to use Alacer stock to satisfy a community property interest in Alacer's increased value.

Second, plaintiff asserts she and Jay stipulated that she would receive her community property interest in the form of Alacer stock. Plaintiff relies upon the trust, which (again) directs the trustees to transfer shares only to satisfy her alleged "community property interest in [Jay's] Alacer stock." But, she showed no community property interest in Alacer stock. She showed only a community property interest in the increased value of Alacer. The trust is silent on how the trustees should satisfy that.

▆▆▆ Third, plaintiff contends Alacer became community property because Jay commingled plaintiff's community property interest with his separate property. She claims Jay's community efforts were "reinvested" in Alacer against her will. How? On our best reading of plaintiff's briefs, this occurred when Jay's efforts were not apportioned to the community as he made them. But California law does not require apportionment of community efforts devoted to separate property on an ongoing basis, upon pain of transmuting

that separate property into community property. Courts account for community efforts toward separate property through equitable apportionment after the marriage, not transmutation during the marriage. (See, e.g., *Dekker, supra*, 17 Cal.App.4th at pp. 852–853.)

Fourth, plaintiff contends she should receive a pro tanto interest in Alacer. She relies on case law giving the community a pro tanto interest in separate property—real property, typically—purchased, paid down, or improved with community funds. (See, e.g., *In re Marriage of Moore* (1980) 28 Cal.3d 366, 373–374 [168 Cal.Rptr. 662, 618 P.2d 208], *In re Marriage of Sherman* (2005) 133 Cal.App.4th 795, 802 [35 Cal.Rptr.3d 137]; see generally *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 438–440 [181 Cal.Rptr. 910].) But using the *Moore/Marsden* approach here would conflict with the prevailing approach used when a separate property business is improved by the devotion of community efforts—equitable apportionment using *Pereira* or *Van Camp*. (See, e.g., *Dekker, supra*, 17 Cal.App.4th at pp. 852–853.) The court did not err by declining to extend the *Moore/Marsden* approach to this set of facts.

*Plaintiff Permissibly Received Prejudgment Interest*

Defendants contend the court wrongly awarded prejudgment interest to plaintiff. It found doing so was "equitable and appropriate" "because plaintiff's community interest existed as of the date of Jay's death, and because plaintiff has lost the use of her share of the community property . . . ."

 We see no abuse of discretion. "Prejudgment interest is awarded to compensate a party for the loss of the use of his or her property." (*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 [148 Cal.Rptr. 22, 582 P.2d 109] (*Bullis*).) "In an action for the breach of an obligation not arising from contract . . . interest may be given [as damages], in the discretion of the jury." (Civ. Code, § 3288.) "[T]he trial court, when acting as the trier of fact, may award prejudgment interest under this section" (*Bullis*, at p. 814, fn. 16) and its decision will "not be overturned unless [it] abused its discretion" (*id.* at p. 815).[9] Plaintiff's loss of use of a community property interest she owned upon Jay's death in 2003 (§ 751; Prob. Code, § 100, subd. (a)) sufficiently supports the court's exercise of its discretion to award prejudgment interest.[10] (See *Bullis*, at p. 815; see also *Redke v. Silvertrust* (1971) 6 Cal.3d 94, 106 [98 Cal.Rptr. 293, 490 P.2d 805] [Civ. Code, § 3288 allows

---

[9] (Cf. § 2553 ["The court may make any orders the court considers necessary to carry out" an equal division of community property upon separation or dissolution.].)

[10] The court may take into account the ascertainability of plaintiff's damages in exercising its discretion. (*Bullis, supra*, 21 Cal.3d at p. 815.) But "[e]ven if plaintiff's damages are not liquidated, prejudgment interest may be awarded" pursuant to Civil Code section 3288. (*Bullis*, at p. 814.)

prejudgment interest award when stepfather wrongly withheld mother's separate property from daughter].)

Defendants contend the court abused its discretion because plaintiff does not really deserve prejudgment interest. They blame plaintiff for delaying her timely receipt of the community property interest in myriad ways, and impugn plaintiff for other perceived failings. The trial court was in the best position to consider these allegations, yet it found the prejudgment interest award "equitable and appropriate." The deferential standard of review does not allow us to second-guess the court on the ground of defendants' frustration with plaintiff.[11]

*The Court Correctly Entered Judgment on the Pleadings for Defendants*

The court granted judgment on the pleadings to defendants on plaintiff's remaining causes of action. The court found "each of the [causes of actions] is based on Plaintiff's assertion she has a shareholder interest or is entitled to the stock of Alacer." So they are.

This is most obviously true for her derivative causes of action, which can be asserted only by record or beneficial shareholders. (Corp. Code, § 800, subd. (b)(1).) Plaintiff alleged beneficial shareholder standing in the third amended complaint by alleging a community property interest in the stock of Alacer. But the court found she had no such interest, and so she has no corresponding right to Alacer stock. She thus cannot state any derivative cause of action.

But this is also true of plaintiff's direct causes of action. She fails to state an impairment or constructive trust cause of action because she is not entitled to the Alacer shares she alleged defendants have withheld from her. Nor can plaintiff save these causes of action by alleging defendants (or Jay) impaired or withheld her community property interest in Alacer's increased value by reinvesting it in Alacer. We have already rejected this theory because that is what equitable apportionment is for—to determine and apportion her interest. And plaintiff obtained judgment for her community property interest, plus prejudgment interest to compensate her for her intervening loss of its use. Finally, plaintiff fails to state a breach of fiduciary duty cause of action because she is not an Alacer shareholder to whom defendants owe any fiduciary duty. The court did not err by granting judgment on the pleadings for defendants and denying plaintiff leave to amend.

---

[11] After many years, the parties have made it painfully clear they do not like each other. Less apparent is why they think we care.

## DISPOSITION

The judgment is affirmed. In the interests of justice, the parties shall bear their own costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.