Filed 12/23/25  Parks v. McDonald CA2/2

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHARLES PARKS,<br>        Plaintiff and Appellant,<br><br>        v.<br><br>GLENN S. MCDONALD et al.,<br>        Defendants and<br>Respondents. | B328090<br><br>(Los Angeles County<br>Super. Ct.<br>No. 22LBCV00013) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge.  Affirmed.

        Law Office of Mark B. Simpkins and Mark B. Simpkins for Plaintiff and Appellant.

        Mintz Levin Cohn Ferris Glovsky and Popeo, Antony Nash and Nada I. Shamonki for Defendants and Respondents.

* * * * * *

Charles Parks (appellant) appeals from a judgment of nonsuit as to all causes of action appellant alleged against his stepdaughter Dimple Renee McDonald (Renee) and her husband Glenn S. McDonald (Glenn) (collectively the McDonalds) on the ground that appellant's claims were barred by the applicable statutes of limitations as a matter of law.[1]  We find no error and affirm the judgment.

## BACKGROUND

This is a family dispute concerning a residence located at 2135 Vuelta Grande in Long Beach, California (the property). Appellant purchased the property from his brother, Willie Parks, in 1981, using the proceeds from a $100,000 loan appellant obtained.  Appellant, his wife Eva Parks, and the McDonalds were all named on title after appellant purchased the property.[2]

On December 16, 1998, appellant and his wife Eva conveyed their entire interest in the property to the McDonalds as joint tenants.  The 1998 grant deed stated, "This conveyance is a bonafide gift and the grantor received nothing in return."  Since its purchase, the McDonalds have been living in the property and were financially responsible for all mortgage payments and upgrades.  The 1998 grant deed is the operative recorded grant deed regarding the property.

On January 14, 2022, appellant filed his verified complaint for (1) breach of written contract, (2) quiet title, (3) financial elder abuse, (4) unfair business practices, (5) unjust enrichment, (6) constructive trust, and (7) declaratory relief.

---

[1]     Dimple Renee McDonald primarily uses the name Renee, and we refer to her by this name as this was the name she used at trial.  However, throughout the record, Renee is occasionally referred to as "Peaches" or "Peach."

[2]     Eva Parks, who was the mother of Renee, died in 2002. Appellant and Eva Parks are sometimes collectively referred to as "the Parks."

Appellant alleged he and Eva purchased the house and owned it until 1999, at which time he and Eva entered into a written agreement with Renee and Glenn whereby appellant and Eva would transfer their interests in the property to Renee and Glenn to help the McDonalds establish their credit. Appellant alleged the four of them entered into a written agreement that Renee and Glenn would transfer back to appellant and Eva their interest upon demand. Appellant alleged four identical, fully executed agreements were prepared and each party was provided with one fully executed agreement. Appellant further alleged he exercised reasonable diligence in locating the signed original agreement without success. He was informed by Renee that, without appellant's knowledge or consent, Eva gave Renee both appellant's signed agreement and Eva's signed agreement. All of appellant's causes of action were based on his assertion that Renee and Glenn breached the agreement by refusing to reconvey title to the property back to appellant on demand.

Trial began on February 7, 2023. A jury was empaneled. At trial, appellant testified he, Eva and the McDonalds entered into a written agreement in 1981 (the 1981 agreement) pertaining to the property. The 1981 agreement was not mentioned in appellant's verified complaint. Appellant testified he and Eva agreed to obtain a mortgage for the property in 1981 as the McDonalds lacked credit, and the 1981 agreement could be terminated at any time and each party would be entitled to a 25 percent share of the value of the home minus the outstanding mortgage amount. Appellant claimed the 1981 agreement was signed by all parties and each party retained a signed copy. The alleged 1981 agreement was not produced at trial.

Appellant testified he could not recall the terms of the 1981 agreement, but "[i]f you would produce the copy of the original agreement, I could testify to that fact that that's what was in the agreement. But you also mentioned it was 40 years ago. That's a long time ago. And I don't recall specifically every item that was written in that agreement. I don't know if you have that opportunity or not. You, obviously, are a much younger person

than I am. So you are asking me to recall something that I don't recall. I'm 87 years of age. And I will be 88 in six months. I don't recall that whole document in and of itself. [¶] The document and everything related thereto was in a folder in my file in my garage. And my wife gave it to Peaches at some point in time without my knowledge and without my consent."

Although in his verified complaint appellant alleged the existence of a written agreement formed in 1999, at trial, he denied the parties entered into a written agreement in 1999. Instead, appellant testified the parties entered an oral agreement in 1998 whereby the Parks deeded the property to the McDonalds so the McDonalds could obtain a home equity loan in their names. Once the McDonalds paid off the loan, they would deed a 25 percent interest to each of the Parks. Appellant acknowledged this alleged agreement was not memorialized in writing. This purported oral agreement was not mentioned in the verified complaint.

Appellant also testified at trial that in 2000, he asked the McDonalds to deed the property back to all four individuals (the Parks and the McDonalds) and they did not do so. On October 22, 2002, appellant wrote a letter to Renee in response to the McDonalds' refusal to deed the property back to all four individuals. In the letter, appellant mentions a telephone conversation he had with Renee, in which he "asked [her] if [she] had ever done the grant deed as [she] promised more than two years ago," and she said Glenn said they were "not going to do it." The letter stated appellant asked the McDonalds to reconvey the deed "several times over the past several years" and the McDonalds never did so.

Appellant testified Renee told him Eva gave her the Parks' copies of the alleged 1981 agreement, and he knew Renee was not going to return the Parks' copies of the alleged 1981 agreement.

After appellant rested his case-in-chief on February 8, 2023, the McDonalds orally moved for nonsuit. They argued (1) appellant failed to provide the existence of any alleged contract; (2) even if there was a contract, the terms of the contract were

4

completely uncertain; (3) even if there was a contract, the alleged contract is barred by the statute of frauds; and (4) all appellant's claims were barred by the applicable statutes of limitations.

After hearing argument, the trial court granted the McDonalds' motion for nonsuit on the ground that appellant's claims were barred by the applicable statutes of limitations. The court stated, "All right. Clearly the statute of limitations began running at the latest in 2002. That's the point at which they're repudiating that he is entitled to it. . . . At that point he knew that they're breaching the agreement." The court further explained, "And once that happens, he is on notice that he needs to bring an action. Waiting twenty plus years to bring the action is clearly a violation of the statute of limitations." The court concluded, "as to all causes of action, the statute of limitations ran a long time ago. [¶] So I would grant the motion for nonsuit. This isn't even a close case."

On March 21, 2023, appellant filed a notice of appeal from the judgment of nonsuit.

## DISCUSSION

### I. Applicable law and standard of review

"'A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor.'" (*Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1495.) "'"In determining whether the plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded."'" (*Ibid.*) "We will not sustain the judgment "'unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendants, and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.'"" (*Ibid.*)

5

## II. Partition

Appellant asserts on appeal that his primary right is for partition. He argues his claim throughout these proceedings was that any party could demand partition of the property at any time, with the proceeds to be distributed pro-rata among the owners. Appellant contends regardless of the causes of action alleged, this is an action for partition. Appellant cites *Patrick v. Alacer Corp.* (2011) 201 Cal.App.4th 1326, 1338, for the proposition that "'[t]he statute of limitations never bars relief between tenants in common in an action of partition.'" Thus, appellant asserts, his claim for partition of the property is not barred by the statute of limitations.

Appellant's theory of partition is new, presented for the first time on appeal. He did not allege a cause of action for partition in his verified complaint, nor did he seek relief in the form of partition. Appellant's opening statement at trial did not mention partition, nor did he mention partition in opposition to the McDonalds' motion for nonsuit.

An appellant may not assert a new legal theory of liability for the first time on appeal. (*Beroiz v. Wahl* (2000) 84 Cal.App.4th 485, 498, fn. 9; *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874.) "'To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.'" (*Richmond v. Dart Industries, Inc., supra,* at p. 874.) We therefore reject appellant's argument that he may pursue a theory of partition at this stage of the litigation.

We note that, even if appellant had alleged a cause of action for partition in the trial court, the evidence at trial shows this cause of action would have failed as a matter of law. An action for partition does not create a new title to property, but divides up the existing interests. (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1404-1405; see also *Rancho Santa Margarita v. Vail* (1938) 11 Cal.2d 501, 539 ["In a partition, there is no change of title between the tenants in common—it is simply a dividing up of what the parties already own."].) Only a co-owner may bring an action for partition of real

6

property "'to sever the unity of possession.'" (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 596.) Appellant was not a tenant in common or joint tenant on title of the property, having gifted his interest in the property in 1998 by way of grant deed. Instead, appellant sought to establish an interest in the property by way of agreements formed in 1981 and 1998. His claims under those alleged contracts were barred by the statute of limitations.

For the reasons set forth above, we decline to reverse the judgment under the theory of partition.

## III. The trial court did not err in granting nonsuit

Appellant does not challenge the trial court's determinations that his causes of action for breach of contract, quiet title, financial elder abuse, unjust enrichment, constructive trust, and declaratory relief are time-barred. However, we note the trial court did not err in determining these causes of action were barred as a matter of law.

Appellant testified he requested the McDonalds convey an interest in the property to him in 2000 and again in 2002. Documentary evidence supported appellant's testimony. Appellant did not file this lawsuit until January 2022, at least 20 years after the McDonalds refused his request.

Claims for breach of written contract are subject to a four-year statute of limitations, and claims for breach of oral contract are subject to a two-year statute of limitations. (Code Civ. Proc., §§ 337, 339.) Thus, the breach of contract cause of action is barred.

As to appellant's quiet title cause of action, the "theory of relief underlying an action for quiet title . . . determines which statute of limitations applies." (*Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610, 615.) Because appellant's quiet title cause of action is based on breach of contract, the four-year statute of limitations applies to bar this claim.

Under Welfare and Institutions Code section 15657.7, appellant was required to bring a financial elder abuse claim "within four years after the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered, the facts

7

constituting the financial abuse." Appellant's financial elder abuse claim is therefore barred.

Appellant alleged the McDonalds were unjustly enriched in acquiring their interest in the property through "misrepresentations, fraud, and elder abuse." Unjust enrichment actions based on fraud are subject to a three-year statute of limitations, which accrues upon the plaintiff's discovery of facts constituting the fraud. (*Fed. Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 347-348 [applying Code Civ. Proc., § 338, subd. (d)].) An action seeking a constructive trust to prevent unjust enrichment is also subject to a three-year statute of limitations. (*Day v. Greene* (1963) 59 Cal.2d 404, 411.) These claims are barred.

Appellant's final cause of action was for declaratory relief, seeking a judicial declaration of the respective rights of the parties to the property. An action seeking declaratory relief is subject to the statute of limitations based on the nature of the right for which relief is sought. (*Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 734.) The longest statute of limitations applicable to appellant's claims is four years, therefore his cause of action for declaratory relief is barred.

Interpreting the evidence most favorably to a plaintiff's case and most strongly against the defendant, and resolving all presumptions, inferences and doubts in favor of the plaintiff, a judgment for the defendant is required as a matter of law. (*Piedra v. Dugan, supra*, 123 Cal.App.4th at p. 1495.)

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs of appeal.


CHAVEZ, J.

We concur:


LUI, P. J.


SIGGINS, J.*

---

*      Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.