Filed 6/17/26  Piltan v. Novell CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| BABAK PILTAN, | B321273 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 19STCV14652 |
| MARIO NOVELL et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment and underlying orders of the Superior Court of Los Angeles County, Richard J. Burdge, Jr, Judge.  Affirmed in part and dismissed in part.

Joseph A. Hearst for Plaintiff and Appellant.

Carter Law Firm and Corey Alan Carter for Defendants and Respondents.

_____

# INTRODUCTION

This is the second appeal between Babak Piltan and Mario Novell before us this year. Piltan initiated a derivative action on behalf of Mac Daddy Films, LLC (Mac Daddy Films) against respondents Mario Novell and his production company, alleging a cause of action for conversion. Piltan claimed Novell registered the copyright in his own company's name instead of in Mac Daddy Films's name, contrary to their mutual understanding.

After trial, the jury found in favor of Piltan and awarded $145,000 in damages. Novell then filed a motion for judgment notwithstanding the verdict (JNOV) and alternatively a motion for new trial, contending the evidence at trial was insufficient as a matter of law to support the jury's verdict as to damages resulting from conversion of the film's copyright. The trial court agreed with Novell and granted both motions; it clarified that it granted Novell's motion for a new trial conditionally, that is, it will not take effect unless the JNOV it concurrently granted does not become final.

On appeal, Piltan claims the trial court erred in granting the JNOV motion because the jury had adequate evidence by which it could calculate damages arising from Novell's conversion of the copyright. Piltan also argues the trial court's order granting a new trial was not supported and requests that we reverse the judgment and direct the trial court to enter the original judgment based on the jury's verdict.

We disagree with each of Piltan's arguments. We affirm the judgment and its underlying order granting Novell's JNOV motion. Because we affirm the order granting JNOV, the conditional new trial order also granted by the trial court becomes moot.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Complaint and Answer*

On October 8, 2019, Piltan filed the operative first amended complaint (FAC) against Novell and Novell Productions.[1] The FAC's caption provides that Piltan brought this action "[d]erivatively on behalf of MAC JAY FILMS, LLC." Elsewhere in the FAC, it provides Piltan derivatively brought this action "on behalf of MAC DADDY FILMS, LLC." The FAC alleged six causes of action, including conversion and declaratory relief as to the rights to copyright and share in the profits generated by the film. We recite the allegations and information pertaining to the conversion cause of action only, which is the subject of the appeal before us.

The FAC alleges:

Piltan and Novell were both involved in producing the film *Mac Daddy's Vegas Adventure* (Missy Moallempour Films and Ytinifni Pictures 2017) (the film), the sequel to *Mac Daddy and Lovers* (Fenix Pictures and Ytinifni Pictures 2015). Novell formed Mac Daddy Films[2] on January 2, 2015 "to conduct the business of producing [the film]" with members—Piltan, Novel, and Mac Jay (now deceased). Piltan and Novell entered into a contract (operating agreement) to finance the production of the film. They agreed Piltan would "fund the production of [the film] and [would] be repaid in part from the profits received from the sales" of the film. Piltan invested $145,000 in the film. On

---

[1] Novell Productions is a California limited liability company; its sole member is Novell.

[2] Mac Daddy Films is a Nevada limited liability company.

3

October 1, 2018, Piltan discovered the film had been completed, released, and distributed.  Pursuant to the operating agreement, Piltan "was to receive 30 percent of the profits as a member of the limited liability company."  As of the FAC's filing date, neither Piltan nor Mac Daddy Films had received money generated by the distribution of the film.

During the course of the parties' prior litigation in Los Angeles Superior Court (LASC) case No. BC622302, arising from the production of the same film, Piltan "discovered that [Novell] had taken and converted for himself the copyright[] to the film and placed [it] in his name and that of his wholly owned company [Novell Productions]."  Novell's "intentional taking of the copyright[] to the film was for the purpose of permanently depriving [Mac Daddy Films] of said copyright[]."  It was agreed that the copyright was to be the "rightful property of [Mac Daddy Films]."  Novell's actions were intentional and malicious and "thus justify the awarding of exemplary and punitive damages" in addition to general damages and/or the value of the copyright.

On November 6, 2019, Novell and Novell Productions each filed an answer to the FAC, with 19 affirmative defenses.  The third and fourth affirmative defenses asserted res judicata and collateral estoppel, respectively, alleging Piltan is barred from relitigating issues determined against him in LASC case No. BC622302.  The 11th and 12th affirmative defenses for release and settlement, respectively, alleged Piltan's FAC was barred by a settlement agreement and general release purportedly signed by Piltan on October 24, 2018.  The settlement agreement resolved the prior case (BC622302) by Piltan against Novell.  By way of the settlement agreement, Novell agreed to pay Piltan $80,000, and in return, Piltan signed a general release with a

4

Civil Code section 1542 waiver.[3]  Piltan accepted the $80,000 settlement payment from Novell/Novell Productions and then filed an acknowledgement of satisfaction of judgment on November 1, 2018.

## II.   *Pre-Trial Conference*

The pre-trial conference took place on November 19, 2021. The trial court noted: "[S]ort of a technical thing that runs throughout everything is, the plaintiff in this case is Babak Piltan.  It's not Mac Daddy Films, LLC.  He is the plaintiff on behalf of Mac Daddy Films.  Mac Daddy Films is not the plaintiff. So all the jury instructions where you use Mac Daddy Films as the plaintiff are wrong."  The court continued: "In a typical derivative action, plaintiff is the plaintiff on behalf of the company or the LLC and the LLC is a nominal defendant" but here, Piltan "didn't name [Mac Daddy Films, LLC] as a nominal defendant in this case."

---

[3]   The settlement agreement also provides: "Plaintiff hereby waives and relinquishes all rights and benefits that it has or may have under [Civil] Code section 1542 . . . to the full extent it may lawfully waive all such rights and benefits pertaining to any of the claims, demands or causes of action released herein.  Plaintiff further acknowledges, understands and agrees that there is a risk and possibility that it may have further claims or defenses or that it may incur or suffer some further loss or damages that is in some way caused by or attributable to the occurrences or events released herein, but which are unknown at the time this Settlement Agreement is executed.  Plaintiff expressly agrees, however, that this Settlement Agreement and the releases herein shall remain in full force and effect notwithstanding the discovery or existence of any such additional or different claims, facts or damages."

5

The court also clarified with Piltan: "You are not seeking return of any property or seeking any [¶] . . . [¶] return of copyright or anything else?" Piltan's counsel answered, "No, your honor."

## III. *Jury Trial and Judgment*

Trial by jury began on November 29, 2021.

Piltan testified: He met Novell in 2005 while they were both working at Raytheon; they became friends. During a meeting in November 2014, Piltan, Mac Jay, and Novell "discussed plans to establish a company" and "it was going to be called Mac Daddy Films, LLC." The company was established on January 2, 2015. Piltan, Mac Jay, and Novell were managing members of Mac Daddy Films. Piltan was also the lead investor responsible for providing up to $145,000 in funding. "The purpose [of creating the company Mac Daddy Films] was to produce and retain the rights from the film," including "the copyrights." The film's budget—prepared by Novell and sent via email to Piltan on January 31, 2015—included $1,250 in a "line item . . . for the copyright of the film" as well as $35 for the "filing fee . . . for filing the copyright." But Piltan, in 2017, realized that Novell had filed for the copyright himself, for himself." Piltan admitted Mac Daddy Films was not yet formed when the parties entered into the short form contract with Ytinifni[4] Pictures (the distributor of the film). Piltan was aware of and received from Novell a scanned copy of the short form contract in December 2014 "shortly after" Novell and the distributor executed it. The short form contract was signed only by Novell and the

_____

[4]    Sometimes the parties refer to Ytinifni as Infinity throughout trial. We will refer to it as Ytinifni.

distributor, and "there's no signature for Mac Daddy Films, LLC." Piltan received an operating agreement via email from Novell on February 5, 2015; the operating agreement "set forth each person's obligations and duties to each other and the company." The agreement was "never signed" by the parties, but it was understood they would "be bound by" it. Piltan admitted he received $80,000 from Novell to settle the prior case.

Novell testified: Ytinifni Pictures was the distributor of the first Mac Daddy film in January 2014. Ytinifni's role was to "distribute the film internationally" and "show the film in different formats." Novell did not make any money from the first Mac Daddy film. Ytinifni was the distributor for the second film too, which was released in October 2017 across digital platforms. The short form contract with Ytinifni listed both Novell Productions and Mac Daddy Films as the producer "[b]ecause Novell Productions was the main production company and Mac Daddy Films, LLC was the company that was used to open the bank account and hold the funds." Novell was listed as the producer and IP copyright owner on the short form contract because he "was the main producer and the copyright owner." Per the terms of the short form contract, Ytinifni was to distribute the film internationally and "would receive a 25 percent cut straight from the profits." Neither Novell nor Novell Productions have received any money from the distribution of the film. The purpose of forming Mac Daddy Films "was to open a bank account and also to hold the funds to expense the production costs of the film." Mac Daddy Films has had its status revoked in Nevada. Piltan never signed the operating agreement. Novell confirmed he signed the settlement agreement at Piltan's lawyer's office on October 26, 2018; Piltan

and Novell had initialed every page.  Novell signed the settlement agreement and paid $80,000 because he "wanted . . . a general release of all claims against [him] and to settle a dispute."

David Shevitz, Novell's attorney in the parties' prior litigation, testified: He helped prepare the settlement agreement between Novell/Novell Productions and Piltan.  Shevitz negotiated with "Mr. Weiner [who was] an attorney that was hired by [Piltan] to negotiate a settlement agreement with myself."  "There was a lot of back and forth negotiation and ultimately we settled on $80,000 as full settlement with a waiver of any other related claims or causes of action under [Civil Code section] 1542."  "Once [the settlement agreement] was drafted, before a payment was made, I made a demand that we receive a signed copy of the agreement by Mr. Weiner or Mr. Piltan, which I did receive prior to Mr. Novell going to Mr. Weiner's office and signing it himself."  When asked why the Civil Code section 1542 waiver language was included, Shevitz testified:  "This language was put in there to ensure that once any payment was made by Mr. Novell, that [Piltan] could no longer bring any future—well, one, to make sure that this judgment is settled in full and that [Piltan] could not in the future bring any cause of action related in any way to this superior court case at all" or "related to the movie at all."  "There was no way I was going to allow my client to pay $80,000 if I didn't have confirmation that we had a clear agreement that was signed by [Piltan]."  Shevitz confirmed that "Mac Daddy Films, LLC" does not appear anywhere in the settlement agreement.  After reviewing his emails with Piltan's counsel Bernard Weiner, Shevitz confirmed that Weiner emailed him on October 25, 2018 with a one-page attachment of the

8

signature page to the settlement agreement, with Piltan's and Weiner's signatures. "Nobody was under the understanding it was a one-page agreement. He was sending me the signature page because we had already worked out the full terms of the underlying agreement we reviewed earlier, the full settlement agreement." The agreement was eight pages long; Mr. Weiner's email to Shevitz included an attachment of the settlement agreement that erroneously had "two page fours [and] two page sixes."

Relevant admitted trial exhibits include:

- The short form agreement (trial exhibit No. 6) entered into by Novell and Ytinifni Pictures on December 23, 2014, providing that Ytinifni shall have the exclusive right to distribute the film for a 25-year term. Ytinifni's distribution fee "shall be 25% of gross receipts." It specifies the production company name as "Novell Productions, LLC assoc. w/ Mac Daddy Films, LLC." Novell is identified as the "Producer / IP / Copyright Owner." Novell is the only signatory alongside a representative of Ytinifni.
- The film's copyright certificate of registration (trial exhibit No. 7) with a stamped date of March 22, 2016, specifying Novell Productions, LLC as the copyright claimant.
- The film's budget (trial exhibit No. 42) prepared by Novell specifying $35 for the cost of the "Copyright (Film)" and $1,250 for the "Title & Copyright Report."

The settlement agreement (trial exhibit No. 43) and Novell's cashier's check to Piltan for $80,000 (trial exhibit No. 90) were admitted at trial, as well as the emails between Shevitz and Weiner pertaining to the negotiation and execution of the settlement agreement. Also admitted were emails exchanged

9

between Piltan and Novell regarding the operating agreement (trial exhibit Nos. 19–21, 31, 34, and 37), even though a copy of the (unsigned) operating agreement was not in evidence.[5]

The parties stipulated to a special verdict form. On December 2, 2021, at the close of evidence and argument, that special verdict form was submitted to the jury. On December 3, 2021, the jury answered the special verdict form's questions as follows:

1) "Did Mac Daddy Films, LLC have a right to possess the copyright and company assets for the filming of [the film]?" The jury answered, "Yes."
2) "Did [Novell and Novell Productions] substantially interfere[] with Mac Daddy Films, LLC's property by knowingly or intentionally taking possession of the copyright and funds?" The jury answered, "Yes."
3) "Did [Novell and Novell Productions] act without Mac Daddy Films' consent?" The jury answered, "Yes."
4) "Was Mac Daddy Films, LLC harmed?" The jury answered, "Yes."
5) "Was [Novell's and Novell Productions'] conduct a substantial factor in causing Mac Daddy Films, LLC's harm?" The jury answered, "Yes."
6) "What are Mac Daddy Films, LLC's damages?" The jury answered, "$145,000."
7) "Did Babak Piltan, Mario Novell, and Novell Productions, LLC enter into a Settlement Agreement?" The jury answered, "No."

---

[5] The operating agreement is not in the record on appeal.

On December 10, 2021, judgment on the special verdict was entered.  The judgment states by reason of the special verdict "Piltan on behalf of Mac Daddy Films, LLC is entitled to judgment against [Mario Novell] and Novell Productions, LLC in the amount of $145,000."

## IV.  *Novell's Motions for New Trial and Judgment Notwithstanding the Verdict*

On December 17, 2021, Novell and Novell Productions filed two motions—one for a judgment notwithstanding the verdict (JNOV) and alternatively for a new trial "in the event the court denies the JNOV or if it grants the JNOV and the court of appeal reverses that ruling."  In the JNOV motion, Novell argued the evidence received at trial is insufficient as a matter of law to support the jury's verdict; specifically, "there was no evidence presented by [Piltan] of where the film is or if it ever made a dime of profit or that it is worth anything" and "the only evidence that existed was [that] the movie in fact made no money."  They also argued the entire matter should be dismissed because the corporation, Mac Daddy Films, "is an indispensable party to a representative action brought on its behalf" and failure to join the corporation as a nominal defendant results in "this court ha[ving] no jurisdiction over the dispute."  In the motion for new trial, Novell argued the damages awarded were excessive based on the evidence presented at trial; "[t]he fact that the film cost $165,000 to make does not make the copyright worth that much."

On January 10, 2022, Piltan filed his opposition to Novell's two motions.

11

## V. *Trial Court Hearing and Ruling*

On February 16, 2022, the trial court heard the motions and announced its tentative decision to grant the motions:

"Defendant[s'] motion for a new trial is granted, but will not take effect unless the JNOV concurrently granted does not become final." "Plaintiff argues that the jury awarded the cost of making the Film and that numerous cases addressing the value of specific physical property endorse the cost of the product as a measure of damages where there is no evidence of market value. . . . While the cases Plaintiff cites are useful in the fact situations of those cases, neither the arguments nor the evidence makes them applicable. [¶] There are several problems with Plaintiff's arguments. First, many things in addition to the copyright were produced for the cost of making the Film. For example, there is the Film. Thus, the cost of producing the Film is not the cost of the copyright, which was minimal. Second, the copyright has value only to the extent that it allows the owner to exploit the copyrighted work. In this case, the uncontroverted evidence is that the right to exploit the Film was already assigned to the distributor for 25 years. Under the distribution agreement the LLC was entitled to its share of the revenues from exploiting the work, even though the copyright was registered in Novell's name. The evidence was undisputed that there were no such revenues and the expectation was that there were not likely to be any over the 25 years. Arguably, there may have been some value after 25 years, but there was no evidence presented on what that value was. From the evidence presented, the only reasonable inference was that the Film would never generate revenue for the LLC." "From the facts introduced at trial, there was no value to the LLC of the copyright that it did not get. While the LLC spent money

12

to make the Film, that does not mean that Film had any value not already assigned to the distributor, so there was no value lost when Novell registered the copyright in its name.  In addition, there was no evidence that the LLC expended any time or money to attempt to transfer the copyright from Novell to the LLC.  Thus, having failed to prove any damages, the court will grant" Novell's two motions.  "Defendants also argue that the judgment should be reversed for failure to join the LLC as a party.  It is true that in respect to a shareholder's derivative action, the corporation is an indispensable party to such a suit and must be named as a nominal defendant.  [Citation.]  However, nonjoinder of a party must be raised at the outset of the action or defendant waives the defect. [¶] In any event, having granted JNOV on the damages ground, the court does not address the joinder argument."

Following further argument, the trial court "adopt[ed] the tentative as the ruling of the court."

On March 7, 2022, judgment was entered for Novell/Novell Productions and against Piltan, derivatively on behalf of Mac Daddy Films.

On May 5, 2022, Piltan filed a notice of appeal from the judgment.

## DISCUSSION

First, Piltan contends the trial court erred in granting JNOV because the jury had evidence by which it could calculate damages arising from Novell's conversion of the copyright, such as the cost of producing the film.  Piltan argues the court mistakenly relied on developments occurring after the conversion to find that the copyright had no value.  Second, Piltan contends he was entitled to declaratory judgment that Mac Daddy Films

13

was the owner of the copyright of the film.  Third, Piltan contends the new trial order was not justified, as the jury had a reasonable basis for awarding $145,000 or at the minimum, nominal damages.  He requests that we reverse the judgment and underlying order granting JNOV and direct the trial court to "re-enter the original judgment in favor of Piltan and Mac Daddy Films."  He alternatively requests that we reverse and remand for a new trial "conditional on Piltan's rejection of a remittitur of damages to $1,285."

We disagree with each of Piltan's arguments, as detailed below.

## I.  *Applicable Legal Principles*

An order granting a motion for judgment notwithstanding the verdict is not appealable; instead, the appeal should be from the judgment entered.  (*Jordan v. Talbot* (1961) 55 Cal.2d 597, 602; *Herman v. Shandor* (1970) 8 Cal.App.3d 476, 479; *Mason v. Mercury Cas. Co.* (1976) 64 Cal.App.3d 471, 473, fn. 2; 7 Witkin, Cal. Procedure (6th ed. 2021) Trial, § 433, p. 379)  Here, Piltan correctly appealed from the judgment following the trial court's orders granting JNOV and, alternatively, new trial.

Where the court grants a motion for JNOV, and likewise grants a new trial motion, the order granting the new trial is effective only if, on appeal, the motion for judgment notwithstanding the verdict is reversed and the order granting a new trial is not appealed from or, if appealed from, is affirmed. (Code Civ. Proc.,[6] § 629, subd. (d).)  Thus, if both motions are granted, the new trial order operates as a "backup" to the JNOV.

---

[6]     Undesignated statutory references are to the Code of Civil Procedure.

14

(Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2025) ¶ 18:2, p. 18-1; see § 629, subd. (d).) Hence, the correct procedure is to see first if that judgment will stand up on the theory that the opposing party did not even produce a prima facie case; if it does, there is no need for a new trial and the order granting a new trial will be ineffective. (7 Witkin, Cal. Procedure, *supra*, Trial, § 433, pp. 379–380.) But if the judgment notwithstanding the verdict is reversed, then the moving party must fall back on a second line of defense, the retrial. (See *Jach v. Edson* (1967) 255 Cal.App.2d 96, 100 [order granting new trial reversed]; *Dietrich v. Litton Industries, Inc.* (1970) 12 Cal.App.3d 704, 719 [order granting new trial affirmed].)

A trial court must render JNOV whenever a motion for a directed verdict for the aggrieved party should have been granted—that is, if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support of the verdict. (*Ryan v. County of Los Angeles* (2025) 109 Cal.App.5th 337, 356; *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138; *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) The court must deny the motion if there is any substantial evidence to support the verdict. (*Begnal v. Canfield & Associates, Inc.* (2000) 78 Cal.App.4th 66, 72; *Linear Technology Corp. v. Tokyo Electron Ltd.* (2011) 200 Cal.App.4th 1527, 1532.) Our review is de novo. (*Ryan*, at p. 356.) The test on appeal is the same as that governing the trial court's ruling on the JNOV motion: whether the verdict rests on substantial evidence, contradicted or not, constituting a prima facie case of the claim or defense asserted. (*Gordon v. Strawther Enterprises,*

15

*Inc.* (1969) 273 Cal.App.2d 504, 511; *Wolf*, at p. 1138.)

The standards for reviewing an order granting a new trial are well settled. After authorizing trial courts to grant a new trial on the grounds of "[e]xcessive . . . damages" or "[i]nsufficiency of the evidence," section 657 provides: "[O]n appeal from an order granting a new trial upon the ground of the insufficiency of the evidence . . . or upon the ground of excessive or inadequate damages, . . . *such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons.*" (§ 657, italics added.) Thus, we have held that an order granting a new trial pursuant to section 657 "must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of fact could have found for the movant on [the trial court's] theory." (*Jones v. Citrus Motors Ontario, Inc.* (1973) 8 Cal.3d 706, 710.) Moreover, "[a]n abuse of discretion cannot be found in cases in which the evidence is in conflict and a verdict for the moving party could have been reached." (*Id.* at p. 711; see *Johnson & Johnson Talcum Powder Cases* (2019) 37 Cal.App.5th 292, 336.) In other words, "the presumption of correctness normally accorded on appeal to the jury's verdict is replaced by a presumption in favor of the [new trial] order." (*Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 932; see *Johnson & Johnson*, at p. 336.)

II.    ***The Underlying Order Granting JNOV is Affirmed.***

Piltan contends the trial court erred in granting JNOV because the jury had evidence by which it could calculate damages, to wit, the cost of producing the film, to assess the value of the copyright at the time of conversion. Piltan argues the trial court's "reasoning demonstrates that it was *not* valuing the copyright at the time of the conversion, but was instead

relying upon developments after," such as the film's failure to generate any revenue.

A.   **Applicable Law**

Conversion is the wrongful exercise of dominion over the property of another.  (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1173.)  The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.  (*Ibid.*)  Per Civil Code section 3336, "[t]he detriment caused by the wrongful conversion of personal property is presumed to be: [¶] First—[t]he value of the property *at the time of the conversion . . .* ; and [¶] Second—[a] fair compensation for the time and money properly expended in pursuit of the property."  (Civ. Code, § 3336, italics added.)

B.   **Analysis**

Viewing the evidence in the light most favorable to the party securing the verdict (Piltan), we find there is no substantial evidence to support the jury's damages finding in the amount of $145,000.

We review the evidence, or lack thereof, pertaining to damages.  Piltan presented no evidence as to the value of the copyright on or around the time of conversion—i.e., March 22, 2016—the date on which Novell obtained the copyright's certificate of registration under the name of Novell Productions.  Surprisingly, Piltan produced no expert witness at trial to opine as to the value of the copyright of the film at the time of conversion.  "A copyright *has* a present value based upon the ascertainable value of the underlying artistic work."  (*In re Marriage of Worth* (1987) 195 Cal.App.3d 768, 775.)  An expert's

17

analysis and resulting opinion would have been helpful in that regard.

Novell testified that neither he nor his production company received any money from the distribution of the film. Similarly, Piltan testified that he has received no profits from the film to date.

Most importantly, 15 months *prior* to the date of the conversion, it was already agreed, via the short form contract entered with Ytinifni on December 23, 2014, that Ytinifni would have the *exclusive* right to distribute the film for a 25-year term. Ytinifni's distribution fee "shall be 25% of gross receipts." Thus, the film was already subject to the short form contract with Ytinifni prior to Novell's registration of the copyright. In fact, Piltan testified that he was *personally aware* of the short form contract and had received a scanned copy of the agreement in December 2014 "shortly after" Novell's and the distributor's execution of it. Further, no evidence was provided demonstrating that the copyright's value was affected based on who owned the copyright—Novell Productions or Mac Daddy Films—during the 25-year term where exclusive distribution rights are held by Ytinifni. The copyright's registration in the name of Novell Productions instead of Mac Daddy Films in no way affected the amount of money anticipated from the profit from the film; there is no evidence to the contrary. There was also no evidence demonstrating efforts expended by Mac Daddy Films to transfer or obtain the copyright from Novell Productions.

In addition, any attempt to presently ascertain the value of the copyright at the close of the 25-year exclusivity term with Ytinifni is speculative at best. (See *Engle v. City of Oroville* (1965) 238 Cal.App.2d 266, 274 (*Engle*) ["evidence of loss of

18

prospective profits was too speculative to form a basis of permissible recovery"].)  "In a copyright action, a trial court is entitled to reject a proffered measure of damages if it is too speculative." (*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.* (9th Cir. 1985) 772 F.2d 505, 513.)  Although uncertainty as to the amount of damages will not preclude recovery, uncertainty as to the *fact* of damages may.  (*Ibid*.)  Speculation aside, there was no evidence establishing or attributing any value to the copyright at the expiration of the 25-year term of the distribution agreement on which to base the damage award.

Piltan argues the jury could have relied upon the Piltan's "cost of producing the film to assess the value of the copyright as of the date of conversion."  *Gerwin v. Southeastern Cal. Assn. of Seventh Day Adventists* (1971) 14 Cal.App.3d 209, the case Piltan cites to in support, is distinguishable.  In *Gerwin,* a specific performance action regarding the breach of an agreement for the sale of *restaurant and bar equipment* (versus our case involving the value of a copyright to a film), the plaintiff testified without contradiction that, having previously owned bars, he was familiar with the cost of obtaining replacement equipment.  (*Id.* at pp. 218, 221.)  Witness testimony regarding the market value of new equipment and photographs were received into evidence to show the quality of furnishings. (*Ibid*.)  This evidence proved sufficient proof of the value of the business to support a damage award.  (*Ibid*.)  That is not our case.  Unlike the situation in *Gerwin,* the evidence presented in our case was less than sufficient to prove the value of the copyright on or around March 2016.

Piltan contends "[o]ne way of determining the value of the Film at the time of conversion would be to ask what price Mac

Daddy Films might have received if it had sold the rights to the copyright at the time of conversion . . . . While it is obviously difficult to make that calculation, it was certainly not unreasonable for the jury to conclude that the price would equal at least the cost of production." Yes, this type of information would have qualified as helpful evidence in support of an award of damages. However, as already mentioned, Piltan failed to provide the jury with any expert testimony or calculation to that effect.

Piltan also argues "there was evidence that supported an award of at least nominal damages, because Novell appropriated the cost of the copyright report and of registration of the copyright." We disagree. No other damages were proven and in a tort action " 'nominal damages to vindicate a technical right cannot be recovered . . . where no actual loss has occurred.' " (*Engle, supra*, 238 Cal.App.2d at p. 274.)

In his opening brief, Piltan briefly argues that the trial court erred in entering JNOV because "Piltan was entitled to a declaration that he was the owner of the copyright." Piltan reiterated this position at oral argument, asserting the trial court erred by not declaring Piltan the copyright's owner. Piltan, however, overlooks his own prior representations to the trial court. During his exchange with the trial court at the November 19, 2021 pre-trial conference, the court expressly asked Piltan whether he is "seeking return of any property or seeking any *return of copyright* or anything else?" (Italics added.) Piltan's counsel unequivocally answered, "No, your honor." In addition, the question of whether Piltan owns the copyright or whether the copyright should be returned to Piltan was never posed to the jury. The jury determined in the first question of the special

20

verdict whether "Mac Daddy Films, LLC have a right to *possess* the copyright and company assets." (Italics added.) The question of Piltan's *ownership* of the copyright was never discussed. Moreover, Piltan never pursued declaratory relief below. Piltan noted during oral argument that the issue was raised via his March 3, 2022 objection to Novell's proposed judgment. He contends the trial court failed to "modif[y] the judgment to reflect that ownership of the copyright lay with Piltan." Piltan's assertion that declaratory relief was pleaded in his FAC and later raised via his objection to the proposed judgment does not cure the fact that this issue was never pursued in trial.

We conclude that the verdict was not supported by substantial evidence and therefore affirm the order granting Novell's JNOV motion.

III. ***The Underlying Order Granting the Motion for New Trial is Dismissed as Moot.***

Piltan next argues that while the trial court was entitled to reweigh evidence on the motion for new trial, the court was not permitted to substitute its own judgment for that of the jury on the question of damages.

Because the trial court's order granting JNOV is affirmed on appeal, the conditional new trial order also granted by the trial court becomes moot and is dismissed. (§ 629, subd. (d); *Cobb v. University of So. California* (1996) 45 Cal.App.4th 1140, 1146.) We thus need not and do not address Piltan's claim that the trial court's grant of a new trial was not justified.

21

IV.    *Failure to Join an Indispensable Party is Not a Jurisdictional Defect*

We address Novell's argument that Piltan's failure to join indispensable party Mac Daddy Films to the action "must result in a discontinuance of the action, not for a mere defect in parties, but for lack of jurisdiction to proceed."

A.    **Applicable Law**

Where a cause of action seeks to recover for harms to the corporation, the shareholders have no direct cause of action "[b]ecause a corporation exists as a separate legal entity" (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 (*Grosset*)) and " 'is the ultimate beneficiary of such a derivative suit' " (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1003 (*Patrick*)).  (*Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 149; see *Cotton v. Expo Power Systems, Inc.* (2009) 170 Cal.App.4th 1371, 1380 ["A derivative claim is a property right that belongs to the corporation."].)

"The shareholders may, however, bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so.  When a derivative suit is brought to litigate the rights of the corporation, *the corporation is an indispensable party and must be joined as a nominal defendant.*"[7]  (*Grosset, supra,* 42 Cal.4th at p. 1108, italics added; see *Patrick, supra,* 167 Cal.App.4th at p. 1004 ["Though the

---

[7]    Naming the corporation a defendant, not a plaintiff, follows from the joinder rules: "If the consent of any one who should have been joined as a plaintiff cannot be obtained, he may be made a defendant."  (§ 382.)  So although the corporation is made a defendant in a derivative suit, the corporation nevertheless is the real plaintiff.  (*Patrick, supra,* 167 Cal.App.4th at p. 1004.)

corporation is essentially the plaintiff in a derivative action, '[w]hen a derivative suit is brought to litigate the rights of the corporation, the corporation . . . must be joined as a nominal defendant.' "].)  The particular stockholder who brings the suit is merely a nominal party plaintiff; it is the corporation that is the ultimate beneficiary of such a derivative suit.  (*Patrick*, at p. 1003.)  Thus, the corporation is the real party plaintiff in the action.  (*Ibid*.)  The corporation "must be joined because 'its rights, not those of the nominal plaintiff, are to be litigated' " and to offer the real defendants res judicata protection from later suits.  (*Id*. at p. 1004.)[8]

The determination of whether a party is indispensable is governed by section 389.  (*County of San Joaquin v. State Water Resources Control Bd*. (1997) 54 Cal.App.4th 1144, 1149 (*County of San Joaquin*).)  Section 389 describes a two-part test. Subdivision (a) provides the criteria for who should be included in the lawsuit if joinder is possible, "sometimes referred to as 'necessary' parties."  (*County of San Joaquin*, at p. 1149.)  If a party is deemed necessary but cannot be joined as a party (e.g., because the court does not have jurisdiction over the party), the court must then determine "whether in equity and good conscience the action should proceed among the parties before it" or should be dismissed because the absent parties are "indispensable."  (§ 389, subd. (b).)  Subdivision (b) sets forth the

---

[8]     Although these principles arose in the context of corporations, they apply equally to limited liability companies, including Mac Daddy Films.  (See *PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 963; see also *Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1214, fn. 1.)

23

factors to be considered by the court, including to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties, and whether a judgment rendered in the person's absence will be adequate, inter alia. (*Ibid.*)

Whether a party is necessary and/or indispensable is a matter of trial court discretion in which the court weighs factors of practical realities and other considerations. (*Hayes v. State Dept. of Developmental Services* (2006) 138 Cal.App.4th 1523, 1529.) The standard of review is abuse of discretion. (*Hayes*, at p. 1529; *TruConnect Communications, Inc. v. Maximus Inc.* (2023) 9 Cal.App.5th 497, 515.)

B.    **Analysis**

Piltan argues that since "Novell never raised the absence of the LLC as an issue until after trial, he is estopped to raise the point now." (Italics omitted.) " '[I]t is frequently stated that the failure to join an indispensable party constitutes a jurisdictional defect which *may be raised initially on appeal.*' " (*Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 364 (*Kraus*), italics added.) Regardless, Novell's argument does not succeed here.

Returning to Novell's argument that this court has no jurisdiction over the matter due to the absence of indispensable party Mac Daddy Films—"the failure to join an 'indispensable' party is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand." (*Kraus, supra*, 73 Cal.App.3d at p. 364.) Put differently, it does not deprive a court of the power to make a legally binding adjudication between the parties properly before

24

it.  "It is for *reasons of equity and convenience*, and not because it is without the power to proceed, that the court should not proceed with a case where it determines that an 'indispensable party' is absent and cannot be joined."  (*Ibid.*, italics added.)

The trial court here confirmed that Mac Daddy Films should have been named as a nominal defendant but explained its reasoning that "[n]onjoinder of a party must be raised at the outset of the action or defendant waives the defect."  The trial court was empowered to make that determination.  (See *Martin v. Kehl* (1983) 145 Cal.App.3d 228, 242 ["Any Claim of Lack of Indispensable Party Was Waived"]; see *Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 306 ["the decision whether to dismiss an action for failure to name an indispensable party is a matter of judicial discretion, which may turn on many factors"]; see *Kraus, supra*, 73 Cal.App.3d at p. 366 [" 'When joinder cannot be accomplished, the circumstances must be examined and a choice made between proceeding with or dismissing the action.  The adequacy of the relief that may be granted in a person's absence and the possibility of prejudice to either such person or the parties before the court are factors to be considered in making this choice.' "].)  In fact, the trial court mentioned at the November 19, 2021 pre-trial conference that "[i]n a typical derivative action, plaintiff is the plaintiff on behalf of the company or the LLC and the LLC is the nominal defendant" but here, *Piltan "didn't name [Mac Daddy Films, LLC] as a nominal defendant in this case."*  (Italics added.)  The record shows Novell did not raise any issue at that point as to the trial court's jurisdiction over the matter.

Novell's responsive brief on appeal is silent as to whether the trial court's determination amounts to abuse of discretion and

the record shows he did not raise this issue following the trial court's ruling on Novell's motions either. Novell has thus forfeited that argument and the issue is decided against him. (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 178.)

We pause here to underscore the fact that a great deal of the parties' litigation against each other could have been avoided were it not for their trial counsel's compounded carelessness and/or errors. For instance, there is no reason why Mac Daddy Films was not properly joined as a nominal defendant in the underlying matter, which would have eliminated any subsequent jurisdictional dispute. That would have been an easy fix remediable at the outset. Compounding this, Piltan's FAC inconsistently refers to the company as "Mac Jay Films, LLC" in the caption but refers to the company as "Mac Daddy Films, LLC" elsewhere in the FAC, creating unnecessary confusion and ambiguity.

In addition, the parties' (and/or their counsel's) decision to pursue multiple separate lawsuits arising out of the same set of circumstances, i.e., the producing of the film, resulted in protracted litigation and inconsistent results. Most notably, the jury in one case (LASC case No. 19STCV14650) found Piltan "agree[d] to waive the protection of Civil Code section 1542 when he settled the prior case [BC622302] and accepted $80,000." However, the jury in the underlying case (LASC case No. 19STCV14652) found that Piltan, Novell, and Novell Productions did *not* enter into a settlement agreement. To that end, we invited the parties to provide supplemental briefing on the issue of whether or not the Civil Code section 1542 waiver in the parties' settlement agreement in the prior case precludes Piltan's claims in this case/appeal. Piltan reminded us via his March 13,

26

2026 responsive letter that he signed the settlement agreement individually—not as agent, manager, or representative of Mac Daddy Films.  Thus, Mac Daddy Films is not a party to the settlement and is not a signatory to the settlement agreement—another oversight that would have avoided this underlying lawsuit entirely.  Taken together, the record reflects a pattern of avoidable missteps that unnecessarily burdened both the parties and the judicial system.  Such circumstances highlight the importance of careful case management, accurate drafting, and the consolidation of related claims to promote consistent judgment(s), finality, and efficient use of judicial resources.

## DISPOSITION

The judgment and underlying order granting the motion for judgment notwithstanding the verdict are affirmed.  The underlying order granting the motion for a new trial is dismissed as moot.  Costs are awarded to Novell and Novell Productions, LLC.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

VIRAMONTES, J.          SCHERB, J.

27